MILEY HAWKINS, *Appellant*, V. E. C. WINDHORST,
*Appellee.*

No. 16,545.

SYLLABUS BY THE COURT.

NEGOTIABLE INSTRUMENTS — *Consideration—Mutual Promises—
Bank Check Given by a Purchaser—Refusal to Accept De-
livery.* The mutual and concurrent promises of parties in the
sale and purchase of cattle, wherein a check is given by the
purchaser as a partial payment for the cattle sold, constitute
sufficient consideration for the check; and when an action is
brought by the payee against the drawer on the protested
check the drawer can not defend on the ground that no cattle
were received by the purchaser, when it appears that the cattle
were tendered to him and that the nondelivery of them was
due to the failure of the purchaser to perform his part of the
agreement.

Appeal from Edwards district court; CHARLES E.
LOBDELL, judge. Opinion filed May 7, 1910. Reversed.

*F. Dumont Smith,* and *A. C. Dyer,* for the appellant.
*G. Polk Cline,* and *W. G. Fairchild,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:    This was an action by Miley
Hawkins to recover from E. C. Windhorst the proceeds
of a bank check drawn upon her account by her hus-
band, Fred Windhorst. There is testimony to the effect
that Fred Windhorst purchased ninety-two head of
cattle from Hawkins, and as part payment gave the
check in suit to Hawkins; that the cattle were taken
to Windhorst's, in accordance with the agreement, but
he declined to receive them, and, the check having been
received and protested, this action was brought. It
appeared in the trial that Fred Windhorst had acted as
agent of his wife in business transactions, including
the issuance of checks, but to what extent and for what
purposes were matters of dispute. The scope of the
agency of Fred Windhorst and the means of establish-

ing it were matters of contention at the first trial, and the judgment then rendered was reversed because of rulings rejecting evidence which tended to show that he was the agent of his wife, with authority to sign her name to a check on her account. (*Hawkins v. Windhorst*, 77 Kan. 674.) On the second trial evidence was received tending to show that Fred Windhorst acted for his wife in banking matters, that he deposited money in the bank in her name and drew checks against the account which were sometimes signed "E. C. Windhorst, by Fred Windhorst," and sometimes signed with his name alone. But checks signed either way were accepted by the bank and paid from her deposit and charged to her account. This course of dealing was known to Hawkins at the time the transaction was had and the check delivered to him on the contract. He states that he carried out his part of the agreement on which the check was paid by taking the cattle over to Windhorst and offering to deliver them to him. At the close of the testimony the court instructed the jury, and the following constitutes the entire charge, the last paragraph of which is the subject of complaint:

"For plaintiff to recover in this case he must prove to your satisfaction, by a preponderance of the evidence, that Mr. Fred Windhorst had authority to check on his wife's account for his own transactions; second, that he gave this check in question for a valuable consideration.

"If he has proven both of these facts your verdict should be for the plaintiff, for the sum of the check, with interest at the rate of 6 per cent from its date.

"If you believe from the evidence that the check in question was given as a part of the purchase price of the cattle, which Mr. Windhorst or his wife never received, and that they never actually received anything for the check, then your verdict should be for the defendant."

The contention is that as the cattle were never accepted by the Windhorsts the last paragraph of the in-

struction practically advised the jury to find in favor of the defendant. In effect the jury were instructed that unless the cattle were accepted by the appellee or her husband there was no consideration for the check. It was a written contract, a negotiable instrument, and by virtue of the statute it imports a consideration. (Gen. Stat. 1868, ch. 21, § 7; Laws 1905, ch. 310, § 31; Gen. Stat. 1909, §§ 1644, 5277.) According to some of the testimony the check for $500 was issued and delivered to appellant in the execution of mutual agreements between the parties. There was testimony that it was issued by one having authority to make contracts and to issue checks upon appellee's bank account. The sale of the cattle, including the giving of the check, resulted in an obligatory contract. Assuming that Fred Windhorst had the authority claimed, and which he appeared to have, the check was a *pro tanto* payment on the cattle purchased. If it was given and taken for that purpose, and without other conditions, it was as much a payment as if a promissory note had been accepted or as if cash had been paid. As between the parties it was a valid instrument when it was given and accepted, because there was not only the presumption of consideration, which arises under the law, but there were the mutual, concurrent promises between the parties, and these constitute a good consideration. It is fundamental that an agreement to do something, as well as mutual promises between parties, affords a sufficient consideration for the giving of commercial paper. (9 Cyc. 323; 1 Par. Notes & Bills, p. 191.) Of course, if appellant, after taking the check, had failed to deliver the cattle for which payment had been made by the check, appellee might have defended against appellant's action on the ground of an entire or partial failure of consideration; but appellee can not by nonperformance on her part destroy the consideration of the check or invalidate the contract. Appellant, it appears, performed his part of the contract, and the

other party can not, as we have seen, base a failure of consideration upon his own failure to perform.

For the error in the instruction the judgment is reversed and the cause remanded for a new trial.