MILEY HAWKINS, *Appellee*, v. E. C. WINDHORST, *Appellant*.

No. 17,641.

SYLLABUS BY THE COURT.

1. CONTRACT—*By Agent of Undisclosed Principal—Valid.* An agent may ordinarily, without disclosing the fact of his agency, make a valid contract in his own name for the sale of personal property, which may be enforced by the undisclosed principal.

2. ———— *Same.* The application of this rule is not defeated by the mere fact that in the negotiations for the sale the agent stated that he was the owner of the property, and that the purchaser understood that to be the case.

Appeal from Edwards district court. Opinion filed May 11, 1912. Affirmed.

*G. Polk Cline, T. W. Mosley, T. S. Haun,* and *Charles A. Baker,* for the appellant.

*F. Dumont Smith,* and *A. C. Dyer,* for the appellee.

The opinion of the court was delivered by

MASON, J.: Emma C. Windhorst was engaged in farming, the business being managed by her husband, Fred Windhorst. Miley Hawkins owned 92 head of steers, which were in the possession of A. F. Anderson, who had authority to sell them. Fred Windhorst looked at the cattle and made an agreement with Anderson for their purchase, giving in part payment a check for $500, to which he signed his wife's name. Several days later an offer was made to deliver the cattle, but they were refused. Hawkins sued Mrs. Windhorst upon the check, which Anderson had endorsed to him. Two verdicts were set aside upon appeal, upon grounds not now material. (*Hawkins v. Windhorst,* 77 Kan. 674, 96 Pac. 48; 82 Kan. 522, 108 Pac. 805.) A third trial resulted in a judgment for the plaintiff, from which the defendant appeals.

The defendant denied the authority of her husband to sign her name. to the check. The issue so presented was resolved against her by the jury, the verdict, under the instructions, implying a finding either that her husband had such authority, or that she was precluded by her conduct from denying it. The principal ground upon which a reversal is asked is the rejection of an offer made in this language:

"Defendant now offers to prove that Fred Windhorst bought the cattle of Anderson with the distinct understanding and statement by Anderson and Fred Windhorst that the said cattle were the property of Anderson and that Windhorst refused to accept the said cattle because they belonged to Hawkins."

The defendant maintains that if Anderson in conversation with Windhorst said that he owned the cattle, and Windhorst, believing the statement, agreed with Anderson to buy them, Windhorst had a right, upon learning that the cattle actually belonged to Hawkins, for whom Anderson was acting, to refuse to complete the purchase; that under the circumstances the minds of the parties did not meet, and therefore no contract resulted, and there was no consideration for the check.

An undisclosed principal may ordinarily enforce a contract made for his benefit by an agent.    (1 A. & E. Encycl. of L. 1168; 2 Enc. L. & P. 1214.)

"The rule is elementary that an undisclosed principal may appear and hold the other party to the contract made with the agent. . . . An undisclosed principal may claim the benefit of a contract of sale of his property by his agent, and may maintain an action thereon, and enforce any remedies which might have been pursued by the agent himself." (31 Cyc. 1598, 1599.)

This rule proceeds on the theory that it is not a matter of any consequence to one party to the contract whether he is dealing with the other in a personal or in a representative capacity. Whenever for any reason

12—87 KAN.

a contract with the principal is less desirable than one with the agent personally, the rule does not apply. This situation arises when the contract involves elements of personal trust and confidence in the agent. (Note, 15 A. & E. Ann. Cas. 238.) That the other party has relied upon the financial responsibility of the agent should not affect the matter, since the appearance of a new party adds to his security instead of detracting from it, both the agent and the principal being liable. (31 Cyc. 1574.) The scope of the general rule, and the limitations upon it, are thus stated in an editorial note in 55 Am. St. Rep. 916:

"If the right of an undisclosed principal to treat and sue upon contracts as his own, though made in the name of his agent, be conceded (and that it must be conceded the decisions affirm with substantial unanimity), then the only exceptions to the rule which ought to prevail should be limited to those contracts in which [the effect of] their assertion as contracts of an undisclosed principal must be to impair their effect in favor of the other contractor, either by giving him something less than, or substantially different from, what he contracted for, or by depriving him of some privilege or defense which he had the right to believe himself entitled to when contracting with the agent, without knowledge of the agency. Subject to these limitations, the principal should be permitted to maintain an action as though he had been named in the contract as a party thereto." (p. 919.)

It is said that a person has a right to decide for himself with whom he will have business relations, and therefore that he can not become a party to a contract with a particular person without his consent. This is of course true, but the consent need not be express; it may be implied from circumstances. And the making of an ordinary business contract, without in some way indicating that the personality of the other party is regarded as material, implies consent that it may be enforced by a third person, if it was made in his behalf. Otherwise the enforcement of a contract by an

undisclosed principal could always be defeated by the assertion of the other party that he had made no contract with him, and the rule referred to would be nullified. The parties to a contract may of course agree that the personality of either shall be deemed an essential matter. An intention to make such an agreement may be inferred from circumstances, but is not to be presumed in the absence of affirmative evidence of some character. In the note already quoted from it is said:

"Perhaps if the contract necessarily affirms that the party who is claimed to have been an agent was a principal, or excludes by its terms the idea of his acting as agent, the principal may not recover thereon. It is said that either party to the contract has the right to deal with the person known to him as principal in that capacity only, and if he does so, that another principal can not be substituted, and therefore if the contract or the attendant circumstances show that this subject was in the minds of the parties, and that one of them wished to contract, and did contract, with the other as principal only, the latter can not be shown to have acted as an agent, and therefore his principal can not recover on the contract." (55 Am. St. Rep. 919.)

In order that one party to a contract may refuse to recognize an undisclosed principal, merely because he does not wish to have business relations with him, he must not only have had the purpose to deal solely with the person with whom his negotiations were had, but he must also have made his purpose in that regard manifest. In the course of a discussion of the subject in Huffcut on Agency the author says:

"Subject to the exceptions and qualifications hereafter enumerated, an undisclosed principal may bring an action in his own name upon contracts made by his agent in his behalf, although the third party supposed that he was dealing with the agent as principal. . . . Where the third person has clearly expressed his intention to deal with the agent as principal, . . . the undisclosed principal can not claim the benefits of the contract." (Huffcut on Agency, 2d ed., §§ 129, 132.)

The evidence offered and rejected in the present case did not tend to show that Windhorst regarded the personal ownership of the cattle by Anderson as material, or that he so advised Anderson. It was merely to the effect that Anderson had said that he owned the cattle, and that Windhorst understood that to be the case. In a sense Anderson did own the cattle. He held them for the owner with a power of sale, and was able to give a good title. A statement that he was the owner did not amount to a material false representation unless it was made so by special circumstances. If he had said that no one else had any interest in the cattle, or that Hawkins had nothing to do with them, an entirely different question would be presented.

The decisions chiefly relied upon by the appellant are consistent with these conclusions, although in some of the opinions broader language may have been used than the facts required. In *Winchester & Another v. Howard*, 97 Mass. 303, 93 Am. Dec. 93, the evidence offered was held sufficient to release from his engagement one who had agreed to buy a pair of oxen, upon his discovering that they belonged to persons with whom for years he had had no dealings, and with whom he would not knowingly have entered into any contract. But the evidence included a showing that in answer to his inquiries the agent of the owners, with whom he dealt, said that they (the owners) had no mortgage on the oxen, and that there was no claim upon them excepting the claim which he (the agent) had. In *Barker v. Keown*, 67 Ill. App. 433, the auctioneer who was conducting for an administrator a public sale of the personal property of the decedent, placed the horse of another person among those belonging to the estate and sold it as though it were one of them. It was held that the bidder on discovering the facts was justified in refusing to accept the horse. *Thomas v. Kerr*, 66 Ky. 619, 96 Am. Dec. 262, is an almost exactly similar case. A sufficient reason for these decisions would be that the

value of such live stock as was there involved might be increased by its having belonged to a particular person. In *Boston Ice Company v. Potter,* 123 Mass. 28, 25 Am. Rep. 9, a customer contracted with a company to deliver ice at his residence. He became dissatisfied with the manner of supply, canceled the contract, and made a new one with another company. Later the second company sold out to the first, which continued to furnish him ice, which he accepted and used, not knowing of the change. On learning that the ice was supplied by the first company he refused to pay for it, and the court held that he could not be required to do so. The case has often been cited, doubtless because of the extreme application made of the principle involved. In at least two instances it has been disapproved. (*Rice & Bullen Malting Co. v. International Bank,* 86 Ill. App. 136, 142; *Kelly Asphalt Block Co. v. Barber Asphalt Paving Co.,* 136 N. Y. Supr. Ct., App. Div., 22, 26, 120 N. Y. Supp. 163, 166.) The ice company's knowledge that the customer was unwilling to deal with it was a controlling feature of the decision. The mere fact that the ownership of the business had been changed, without notice to him, would not have enabled him to escape paying for the ice after having used it. The collection of an account for merchandise could not be defeated by a showing that the merchant, while professing to do business for himself, was really acting for another.

Complaint is also made of a refusal to give an instruction reading as follows:

"You are instructed that if Fred Windhorst stated in the presence of Anderson that this check was to be held till return came from the cattle and that then Anderson agreed to such settlement, such fact may be considered as tending to show that the transaction was a personal one with Fred Windhorst, and that he (Anderson) did not rely on a recovery from defendant."

If an arrangement to hold the check until returns were received from the cattle indicated that Anderson

was looking to. Fred Windhorst and not to his wife for its payment, the inference was one of fact, which the jury were competent to make, and the refusal of the court to direct especial attention to the matter is not a ground for reversal.

A witness was permitted over objection to testify that he had sold other cattle to Fred Windhorst, but while the evidence may not have been material it does not seem to have been prejudicial.

The judgment is affirmed.