## KRAUSS *v.* WEAVER.

[No. 23,952.   Filed April 21, 1921.   Rehearing denied October
11, 1921.]

1.   APPEAL.—*Review.—Finding.—Evidence.—Sufficiency.*—On ap-
peal, when the insufficiency of evidence to support the finding
is assigned as error, the Supreme Court will consider only the
question whether the evidence most strongly tending to sup-
port it is sufficient to sustain the verdict.   p. 135.

2.   SUNDAY.—*Illegal Contracts.—Pleadings.*—The issue that a
contract was illegal because made on Sunday would have been
sufficiently presented by a general plea that it was entered into
on Sunday, leaving the defendant the burden of showing by
way of reply, that it came within an exception as being made
by persons who conscientiously observed the seventh day of the
week.   p. 136.

3.   SUNDAY.—*Illegal Contracts.—Pleadings.—Burden of Proof.*—
Where a defendant by his answer asserts that a contract was
made on Sunday and that neither of the parties to the contract
came within the exception as being persons who conscientiously
observed the seventh day of the week as Sabbath, the defend-
ant assumed the burden of proving the defense set up.   p. 136.

4.   SUNDAY.—*Illegal Contracts.—Statutes.*—A contract entered
into on Sunday by persons; who do not conscientiously observe
the seventh day of the week as Sabbath, which was not agreed
to or ratified on any secular day, is in violation of the statute
(§2364 Burns 1914, Acts 1909 p. 436) and cannot be enforced
by suit.   p. 139.

5.   EVIDENCE.—*Admissibility.—Conclusions.*—In an action by an
employe against his employer for alleged commissions due,
questions as to who had charge or control of defendant's store
in his absence propounded to the plaintiff, were properly ex-
cluded, as calling for conclusions of the witness.   p. 139.

6.   EVIDENCE.—*Admissibility.—Reversible Error.*—In an action
by an employe for alleged commissions due on sales, a letter
written by the defendant, after the plaintiff had left his em-
ploy, inclosing a check for a small amount as commissions,
was admitted over the objection that it was given in settlement
or compromise, the letter not so stating, its introduction was
not reversible error.   p. 140.

From Marion Superior Court (103,944); *W. W.
Thornton,* Judge.

Action by Grace Weaver against Leo Krauss.   From

a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1394 Burns 1914; Acts 1901 p. 565, §10.) *Reversed.*

*William J. Henley, R. L. Ewbank, Henry Abrams* and *Ben Berg,* for appellant.

*Newton M. Taylor, Edgar A. Brown* and *J. Olias Vanier,* for appellee.

EWBANK, J.—Appellee recovered a judgment against appellant for $3,975.52, as being the amount of a commission, in addition to a weekly salary, of two per cent. of the aggregate of all sales made in appellant's store during a period of more than two years of the time that appellee was employed there. Her complaint alleged that appellant employed her to work in his store in October, 1912, at a straight weekly salary, and that in November, 1913, after appellant had remodeled and enlarged his store, they entered into a new contract and mutually agreed that beginning with December 1, 1913, appellant would pay her for her services in the store the sum of $25 at the end of each week, and a commission of two per cent. on the gross sales of all goods sold in said store, the commission to be paid at the end of each period of six months; that she worked under this agreement from December 1, 1913, until February 12, 1916, and received $25 each week, but that no part of the agreed commission was paid. The complaint was filed August 21, 1916. The appellant answered by a denial and by general and special pleas that he had paid appellee all that he owed her, and by a further plea that the alleged contract sued on was made on Sunday and was never ratified on any secular day, and "that at the time of entering into said contract, and ever since then, neither the plaintiff nor the defendant have been persons who conscientiously observed the seventh day of the week, or any other day

except Sunday as the Sabbath." The appellee replied by a denial. The issues thus formed were submitted to the court, which found for appellee in the amount above stated, for which judgment was rendered in her favor. Appellant's motion for a new trial was overruled, and he excepted and assigns as error the overruling of said motion.

The first specification in the motion for a new trial is that the decision is not sustained by sufficient evidence. Both appellee and appellant testified without contradiction that the weekly payments of $25 and $30, respectively, were all made in full. The undisputed evidence was that in the month of December, 1913, being the first month for which appellee claimed commissions, the gross sales in appellant's store amounted to $21,854.58, and that a commission of two per cent. of this amount would be $437.09, and that the aggregate of all sales between December 1, 1913, and February 12, 1916, was $198,776.72, and that two per cent. of that amount would be $3,975.52, the amount of the verdict. And that in the fourteen months before December 1, 1913, appellee had been working in appellant's store for a weekly salary, beginning at $10 per week and gradually increasing to $25 per week—or $22; the witnesses vary as to this amount. And that she continued to receive $25 at the end of each week for nearly two years, and after that until she quit the employment received $30 at the end of each week. And, however improbable it may seem, that a man who was obtaining the services of a girl at $25 per week should voluntarily promise to give her a commission, not only upon sales made by her, but upon the total gross sales in his store, beginning just before the Christmas holidays, at such a rate that her commissions for the first month would amount to $437.09, being over $100 per week, in addition to her stipend of $25 received each

week, or that with large sums of commissions accumulating she should continue working for two years and some months, receiving a salary each week which was far less than the agreed commissions, without ever mentioning the commissions except by an indefinite reference on an occasional Sunday afternoon when her mother was present, and however strongly a consideration of these facts ought to appeal to the trial judge when called on to review the sufficiency of the evidence, it is not a matter for consideration by this court. We consider only the question whether the evidence most strongly tending to support the finding, if true and given credit by the jury and the trial judge, is sufficient to sustain the finding.

The issue that the contract was illegal because made on Sunday would have been sufficiently presented by a general plea that it was entered into on Sunday, leaving to appellee the burden of showing, by way of reply, that it came within an exception as being made by persons who conscientiously observed the seventh day of the week. *Western Union Tel. Co.* v. *Yopst* (1889), 118 Ind. 248, 250, 20 N. E. 222, 3 L. R. A. 224; *Western Union Tel. Co.* v. *Henley* (1899), 23 Ind. App. 14, 17, 54 N. E. 775. But, the defendant having by his answer voluntarily assumed the burden of showing that he and appellee were not within the exception, the question arises whether the defense set up by the answer was proved.

It is urged that the undisputed evidence proves that, if entered into, the contract to pay a commission was made on Sunday by persons who did not conscientiously observe another day as the Sabbath. The only witnesses who testified that such a contract was made, or that it was ever mentioned by appellant after it was agreed upon, were appellee and her mother. Appellee testified positively that it was made in the course of

a conversation at her mother's home on the next Sunday after the opening of the "new store", following its enlargement. She first testified that it was on November 23, 1913, but afterward said that it was a week later, on November 30, 1913. She said that she commenced working for appellant in the store at $10 per week and in a few months was increased to $12, and after the holidays to $15, and six months later to $22, and after another month and a half to $25 per week, and was receiving $25 when the new store opened; and that she received that amount each week until in October, 1915, from which time until she quit the following February she received $30 each week. She testified that the new store opened November 17, 1913, and that the "opening" celebration continued for a week, and, that after the conversation when the agreement was made she had no further conversations with appellant about the commissions until on a Sunday afternoon the next June or July, after the first six months period had elapsed, and that after eighteen months she again had a conversation with appellant on a Sunday afternoon; and that in the meantime, fourteen months after she claims to have begun working under the agreement for a commission in addition to her weekly salary, she had a conversation with him at the store, in which he said it would be inconvenient to pay her, and would the next summer or next six months be satisfactory, at which time he would pay up all the back commission.

Appellee's mother also testified to having heard the original conversation, when the alleged contract was made, and two or three subsequent conversations, and that all of them which she heard were at her home and all were on Sunday, until one which occurred at the store after appellee had ceased working for appellant. But neither appellee nor her mother, nor any other witness, testified that the terms of the contract to pay

appellee a commission of two per cent. on the gross sales in appellant's store were agreed upon, stated, or even intelligibly referred to at any time except on Sunday. Appellant and his witnesses denied that any such contract was ever made, or that any such conversations took place. Appellee further testified that she was not a "Hebrew in religion" and not Jewish; that appellant's store was always open from Saturday morning early until late Saturday night, and that she and appellant and his wife were there and that she (appellee) sold goods on Saturdays, and, in fact, on Saturday she often worked in the store from eight o'clock in the morning to midnight without stopping for anything to eat—any lunch or dinner. Appellee further testified that appellant pays rent on a pew in the Jewish Church on Delaware street, and kept such fast days as the witness knew to be Jewish holidays, from what she knew of that religion, and sometimes went to church on Saturdays, but when he was away "at the church hour" the store was open as usual. Appellee's mother testified that appellant's "nationality" was Jewish and that he "observed the Jewish holidays," but that his store was kept opened every Saturday, "the same as the Gentiles." Appellant testified that he never closed his store at any time on Saturday as an observance of any religious day while he was in business, that it was never closed for religious reasons any day of the week, and that Sunday was the only day he observed as a day of worship; that he was not an orthodox Jew, and never attended the Hebrew congregation on Delaware street on Saturdays, but did attend there "on certain feast days that we have," and that appellee worked in his store all day every Saturday. There was no evidence whatever tending to prove that either appellant or appellee did "conscientiously observe the seventh day of the week as the Sabbath," and the foregoing testimony

establishes without question that neither party to this alleged contract was within the exception of the statute which forbids the making of secular contracts on Sunday, and that the plaintiff (appellee) knew that fact.

It clearly establishes, without conflict, that if the contract sued on was made, it was entered into in violation of a penal statute (§2364 Burns 1914, Acts 1909 p. 436), and does not even tend to show that so much of the alleged contract as fixed appellee's compensation at two per cent. of the gross sales in the store, in addition to $25 per week, was agreed to, ratified, or even mentioned on any secular day. Such a contract cannot be enforced by suit. *Perkins* v. *Jones* (1866), 26 Ind. 499; *Pate* v. *Wright* (1868), 30 Ind. 476, 95 Am. Dec. 705; *Parker* v. *Pitts* (1881), 73 Ind. 597, 38 Am. Rep. 155; *Rogers* v. *Western Union Tel. Co.* (1881), 78 Ind. 169, 41 Am. Rep. 558; *Brown* v. *First Nat. Bank* (1894), 137 Ind. 655, 672, 37 N. E. 158, 28 L. R. A. 206; *City of Indianapolis* v. *Wann, Rec.* (1896), 144 Ind. 175, 187, 42 N. E. 901, 31 L. R. A. 743; *State* v. *Hogreiver* (1899), 152 Ind. 652, 53 N. E. 921, 45 L. R. A. 504; *Carr* v. *State* (1911), 175 Ind. 241, 93 N. E. 1071, 32 L. R. A. (N. S.) 1190; *Western Union Tel. Co.* v. *Henley, supra; Stellhorn* v. *Board, etc.,* (1915), 60 Ind. App. 14, 110 N. E. 89.

In testifying as a witness the appellee was asked by her own attorney the following questions, with reference to a time, soon after appellee first began working for appellant, and about nine months before the contract sued on is alleged to have been entered into, when appellant and his wife went on a trip to Panama and were gone a month: "In whose charge did they leave the store at that time? Who had control of the store when they went away?" Over an objection to each question that it called for a conclusion, and over an exception by appellant, the wit-

ness answered that "I not only had charge of the store—" and then in answer to other questions recited certain facts tending to support that statement. And again with reference to a time when appellant and his wife went away to New York, the same witness was asked: "Who had charge of the store during that period?" Over the objection that it called for a conclusion, and over an exception by appellant, she was permitted to answer: "I did." The facts stated by her to support the assertion that she had "charge" and "control" were that she had the keys to the store, the office, and the cash register, kept the books, dressed the show window, and made the deposits in the bank during such times. Some of these facts were denied by appellant and his witnesses, and as to others, such as keeping the keys, having the combination of the safe, and dressing the show window, it was testified that appellee shared each of those distinctions with one or more other employes. And appellant testified to many other facts tending to show that his head clerk operated the store when he was not there, and that appellee merely worked as one of the employes under him. Each of the questions objected to asked for a conclusion to be drawn from facts which had not been stated, and the several objections should have been sustained.

As to the other questions to which appellant's exceptions were overruled, it does not appear that the answers given in response to them could have harmed him.

A letter written by appellant to appellee after she had left his employ, stating that he enclosed a check for $69.44 as a bonus on sales to the amount of $6,344.30 made by her "from January to October, at which time, owing to your dissatisfaction with the arrangement made before, you were placed on a straight salary of $30 per week," was admitted and read in evidence, over appellant's objection that "this

letter was written in an effort to settle the controversy," and appellant excepted. There was evidence tending to support the objection, but there was also evidence directly to the contrary, and the letter did not state that it was an offer of compromise, or by way of concession to settle a controversy. Its introduction in evidence was not reversible error.

The judgment is reversed, and the cause is remanded, with directions to sustain appellant's motion for a new trial.