## GIBSON COMPANY *v.* MORTON.

[No. 11,984.   Filed June 30, 1925.   Rehearing denied November 19, 1925.   Transfer denied March 8, 1929.]

*Charles Remster, H. H. Hornbrook, Albert P. Smith, Paul Y. Davis* and *Kurt F. Pantzer*, for appellant.

*William A. Pickens, Linton A. Cox, Earl R. Conder, William D. Bain* and *Thomas Harvey Cox*, for appellee.

McMAHAN, J.—Complaint by appellee, in two paragraphs, upon two contracts for the rental of advertising boards, and for damages for an alleged breach of contract.

The first paragraph alleges, in substance, that in April,

1919, the parties entered into a written contract whereby appellee agreed to erect, paint and maintain forty-five field bulletin boards and to rent the same to appellant for a term of three years from the average date of completion, appellant agreeing to pay an annual rental of $75 for each board, the rental to be paid in monthly installments of $6.25; that in May of the same year the contract was modified with respect to cancellation and rental on additional signs contemplated; that appellee fulfilled all the requirements of the contract, except wherein appellant made it impossible for him to do so, by reason of appellant's repudiation of the contract in August, 1920; that appellee made diligent effort to erect the boards, but that, while he was engaged in such effort, appellant repudiated the contract and notified him that it would not perform the conditions of the contract; that appellee had erected and completed twenty boards near Indianapolis, the average date of completion being September 16, 1919; that he completed five near Muncie in May, 1920, five near Terre Haute in July, 1920, and five near Vincennes in June, 1920; that, at the date when appellant repudiated the contract, appellee had completed and painted at his factory ten boards to be erected at Lafayette and Danville, and had shipped the same, but that appellant refused to approve locations for these boards, for which reason they were not erected; that, owing to conditions arising by reason of the World War, appellee was prevented from erecting such boards as soon as he would have done had it not been for the war, but that in view of the war conditions he erected the boards as rapidly as possible and within a reasonable time; that appellant had defaulted in the payment of the rental for the boards erected, by reason of which default the rental for the entire term of the contract (three years) was due and payable, and asking judgment for the rental for the boards for the entire term of the con-

tract and for damages for breach of the contract. The second paragraph is, in substance, the same as the first and alleges that in June, 1919, the parties entered into a second contract for the erection of eighteen boards.

The contracts were for three years from the average date of the completion of the boards, and provided that, if there should be a default in the payment of the rent for three months, the rental for the remainder of the rental period should become due and payable. Appellant filed an answer of denial and of payment. A trial by jury resulted in a verdict and judgment for appellee for $6,000. Appellant's motion for a new trial being overruled, it appeals, and insists that the verdict is not sustained by sufficient evidence, and is contrary to law; that the amount of the verdict is excessive and that the court erred in giving and refusing to give certain instructions.

The contracts required that all boards should be of first-class workmanship and construction, and painted in an artistic and workmanlike manner, with the best quality of oil and lead, from a design submitted to and approved by appellant, and about once each year thereafter be repainted. The contracts failed to fix the time within which the boards should be erected. The law, however, required that they should be erected within a reasonable time.

The boards were not all erected, and in August, 1920, appellant, claiming there had been unreasonable delay in the erection of the boards and that many of those erected did not comply with the requirements of the contracts, in that they were not made of good material, that the paint used was of an inferior quality, and that some of them were to be of a style known as "de luxe," but that none of them was of that style, notified appellee that it had cancelled the contract and refused to be further bound thereby.

The evidence shows that the advertising boards were made in sections at appellee's factory in Cincinnati, Ohio, and shipped to the cities where they were to be erected, and is sufficient to sustain a finding that there was an unreasonable delay in the erection of the boards; that they were not constructed of first-class materials and that the paint used was not of the quality called for in the contract. In August, 1920, when appellant refused to carry out the contract, nineteen of the boards had been erected at or near Indianapolis, five at Muncie, five at Terre Haute, five at Vincennes, four at Shelbyville, three at Sullivan and two at Seymour.

Lawrence A. Brook, the receiving and shipping clerk employed by appellee, testified that the boards were shipped as follows: On August 20, 1919, ten boards to Indianapolis; September 6, 1919, ten boards to Indianapolis; September 10, 1919, two boards to North Vernon; September 18, 1919, one board to Seymour; September 19, 1919, three boards to Sullivan; October 4, five boards to Champaign, Illinois; November 26, 1919, five to Muncie; June 5, 1920, five boards to Terre Haute; June 10, 1920, five boards to Vincennes, and August 6, 1920, five boards to Lafayette.

The boards shipped to Lafayette were returned to Cincinnati, but it seems they remained in possession of the railroad for several months. What became of these boards is somewhat uncertain. It appears that the railroad company brought suit against appellee for the freight and storage charges on them, and claimed $189.66 for sixty-seven days storage at Lafayette, $770.63 for storage at Cincinnati from November 5, 1920, to May 5, 1921, and for auctioneer's fees and newspaper advertising, thus indicating that the boards were sold to pay the charges, although there is no evidence to show to whom they were sold or the amount

for which they were sold. The railroad recovered a judgment against appellee for $1,250, which was settled by appellee's paying $796.46.

The boards were erected at the several places as follows: At Indianapolis; nine in August, three in September and seven in October, 1919; four at Shelbyville, in October, 1919; one at Seymour in October, 1919; five at Muncie in May, 1920; five at Vincennes in June, 1920; three at Sullivan and five at Terre Haute in July, 1920.

The real questions involved in this appeal relate to the amount of the recovery, and the rule by which it is to be governed. As heretofore stated, appellee sued for three years' rental for the boards actually erected and for damages by reason of appellant's repudiation of the contracts. Forty-four of the sixty-three boards called for in the contracts were erected. The annual rental for these forty-four boards is $3,210. For the three years it would be $9,630. How the jury arrived at the amount of the verdict ($6,000) is not clear, and the parties have not aided us in solving that question.

In one instruction the jury was told that if it found certain facts to exist, appellant was not justified in the cancellation of the contract, and it should find for appellee, "in such amount as you find from the evidence will fully compensate plaintiff for all his damages fairly, naturally and reasonably flowing to him in the natural course of things, from such wrongful cancellation." In another instruction the jury was told that if certain facts were found to exist, appellant had the right to cancel the contract, and that the jury would be warranted in finding for the plaintiff to the extent of the fair value of the work and service rendered by the plaintiff and the benefit derived by defendant, "less any amount already paid on the contract."

In July, 1921, the parties entered into a written agree-

ment, which, after reciting that a dispute had arisen between the parties as to their rights and obligations under the rental contract sued on, stated that the parties had agreed that appellee might proceed to sell any or all of the boards erected, and, as sold, they should be taken out of the rental contract between the parties, and that the execution and carrying out of this last contract should have no effect on the contracts theretofore existing between the parties other than to relieve appellant to the extent of the boards sold. There is no evidence as to the rental value of the boards erected or service rendered other than as appears in the written contracts. The evidence is sufficient to sustain a finding that appellee failed to erect the boards within a reasonable time; that those erected were not of the character called for in the contracts, and that appellant was warranted in repudiating the contracts and in refusing to be bound thereby. Under such facts, the proper measure of recovery, in our judgment, would be the reasonable rental value of the boards erected from the time of their completion to the time of the cancellation, such value, however, not to exceed the rental value as fixed in the contract, less payments theretofore made.

If, on the other hand, appellant was not warranted in repudiating and canceling the contracts because of their having been breached by appellee, the latter should recover the contract price for the boards actually erected up to the commencement of the suit, less any credit by reason of appellee's having sold the use of the boards to other parties and less any amount paid thereon, provided the boards were repainted, maintained and kept in the condition called for in the contracts. There might be circumstances under which appellee would be entitled to additional damages because of a wrongful cancellation, but not under the record now before us. Appellee would also be entitled to recover

for freight paid on boards shipped to Lafayette, and under proper pleadings, other costs, such as expenses of reselling the boards, but he would not be entitled to the expense of returning the boards, in the absence of evidence that it was necessary that they be returned. But under the evidence in this case, he would not be entitled to recover for such expenses as demurrage and storage.

Appellant contends that, in order for appellee to recover in this action, he must show a substantial compliance with his obligations under the contracts, and if appellee did not substantially perform the contract, appellant might, without liability, cancel the uncompleted portion of the contracts, and would not in this action be liable for any part performance. We cannot concur in this contention under the facts in this case. The general rule is, that a party cannot recover upon a special contract which he has failed to fulfill on his part, but there is another well-established rule, to the effect that where the plaintiff's agreement or stipulation constitutes only a part of the consideration for the defendant's agreement, and the defendant has actually received a partial benefit, and the breach on the part of the plaintiff may be compensated in damages, an action may be maintained on the contract without showing strict performance. *Deep Vein Coal Co.* v. *Jones* (1912), 49 Ind. App. 314, 97 N. E. 341.

The jury returned a general verdict in favor of appellee, and there is nothing in the record to disclose whether the jury found appellant was or was not justified in repudiating the contracts, or what method the jury adopted in arriving at the amount found to be due appellee. If the verdict is based upon the theory that appellant was justified in repudiating and canceling the contracts, the amount of the recovery is, without doubt, excessive. If the jury found that appellee had

fulfilled the contract as far as permitted by appellant, and that appellant was not justified in repudiating and canceling the contract, the jury was incorrectly instructed as to the measure of recovery. In fact, both instructions on the measure of recovery heretofore referred to were erroneous, and gave the jury no proper basis for ascertaining the amount of recovery. Appellee, in order to sustain the verdict, says, "it includes in one lump sum the fair value of the work done, damages for rescission, freight and labor and material, etc., on boards completed and shipped, but not erected, boards partly built and material bought for boards not built." If it includes these items, it is, without doubt, contrary to law and cannot be sustained.

In view of the amount of recovery, the incorrectness of the instructions given as to the amount of recovery, and the failure of the court to correctly instruct on that subject, the cause is reversed, with directions to sustain the motion for a new trial and for further proceedings.