SALT SPRINGS NATIONAL BANK *v.* SCHLOSSER.

[No. 13,861. Filed April 25, 1930.]

*Charles A. Hitchcock* and *George R. Harper*, for appellant.

*Frank J. Treckelo* and *Church & Chester*, for appellee.

NEAL, P. J.—This is an action instituted by appellant

to recover of appellee the principal, interest, protest and reasonable attorney fees evidenced by two promissory notes executed by appellee. The two notes bore date of May 15, 1926, and each called for the payment of the principal sum of $500, with interest, protest and attorney fees, in six and 12 months respectively, at the First National Bank, Elkhart, Indiana. The payee named in each note was "Windswept Farms," which was a trade name under which Josephine Alvord operated and conducted a fox ranch.

The amended complaint alleged in part that, for a valuable consideration, and before the maturity of the notes, Josephine Alvord, the holder of the notes, in due course of business, sold, indorsed and delivered the notes to appellant, who is now a *bona fide* holder for value; that the notes were past due, and that it was necessary to employ an attorney to prosecute the action, and that a reasonable attorney fee was $200.

Appellee's amended separate and several answers were as follows: (1) General denial; (2) and (3) no consideration; (4) failure of consideration; (5) fraud by the payee in procuring the execution of the notes.

Appellant demurred to the fifth paragraph of answer, which demurrer was overruled. Appellant replied in two paragraphs to the second, third, fourth and fifth paragraphs of answer. The first paragraph of reply in each instance was a general denial, and the second paragraph was to the effect that appellant was the holder in due course of the two notes, having purchased the same for a valuable consideration before maturity from Josephine Alvord, without notice of any defect or defense.

Appellee, before the day of trial, dismissed his answer in general denial. Before the jury was sworn, appellee presented in writing his motion, which was to the effect that by the allegations of his four paragraphs of amended answer, he had admitted the execution of the notes,

protest and protest fees in the sum of $6.78; that the notes were past due and unpaid, and that a reasonable attorney's fee for the collection of the notes was $200; that appellee was therefore entitled to the open and close in the trial of the cause before the jury. The motion was granted by the court, over the objection of appellant, which reserved an exception. Appellee was thereupon, as recited in the special bill of exceptions, "permitted by the court to present his evidence first to the jury before allowing the plaintiff (appellant) to offer his evidence, and said court allowed said defendant to argue and address the jury prior to plaintiff's argument to the jury and allowed the defendant to close the evidence and also to close the argument to the jury, to which action of the court the plaintiff at the time objected and excepted."

After the introduction of all the evidence and before the argument, appellee withdrew his second, fourth and fifth paragraphs of answer.

The jury returned a verdict for appellee and judgment was rendered on the verdict.

Appellant has assigned error in overruling his motion for a new trial. The several causes presented for our consideration are: The court erred in granting the motion of appellee to open and close the case; error in overruling appellant's motion at the conclusion of appellee's evidence to instruct the jury to return a verdict for the plaintiff; separate error in the refusal of the court to instruct the jury at the close of the evidence to return a verdict for appellant; separate error in the refusal of the court to give instructions Nos. 3, 5 and 6 tendered by appellant; separate error in the giving of instructions Nos. 12 and 13; that the verdict is not sustained by sufficient evidence; the verdict is contrary to law.

Section 584 Burns 1926, provides that the party upon "whom rests the burden of the issues" has the right to

open and close the case. Appellee, in this case, alleged in his fifth paragraph of amended answer that the notes sued upon were procured by the payee through fraud and false representations. Thus, when the issues were closed, the burden, which, in this case, must be determined from the issues made by the pleadings, rested upon appellant to prove that it acquired title to the notes as a holder in due course, and that it had paid a valuable consideration for them. *McCloskey, Admr., v. Davis, Admx.* (1893), 8 Ind. App. 190, 35 N. E. 187; *Bright Nat. Bank* v. *Hartman* (1915), 61 Ind. App. 440, 109 N. E. 846; *Nat. City Bank* v. *Kirk* (1922), 85 Ind. App. 120, 134 N. E. 772; *Wheat* v. *Goss* (1923), 193 Ind. 558, 141 N. E. 311.

It is well settled in many jurisdictions, and in this state, that, in case of a jury trial, the right to open and close is a substantial right, the denial of which constitutes reversible error. *Downey* v. *Day* (1853), 4 Ind. 531; *Howard* v. *Cobb* (1854), 6 Ind. 5; *Haines* v. *Kent* (1858), 11 Ind. 126; *Ashing* v. *Miles* (1861), 16 Ind. 329; *Judah* v. *Trustees of Vincennes University* (1864), 23 Ind. 272; *Cox* v. *Vickers* (1870), 35 Ind. 27; *Hill* v. *Perry* (1881), 82 Ind. 28; *Bannister* v. *Jett* (1881), 83 Ind. 129; *Peed* v. *Brenneman* (1883), 89 Ind. 252; *Kinney* v. *Dodge* (1885), 101 Ind. 573; *McCoy* v. *McCoy* (1886), 106 Ind. 492, 7 N. E. 188; *Boyd* v. *Smith* (1896), 15 Ind. App. 324, 43 N. E. 1056; *Brower* v. *Nellis* (1896), 16 Ind. App. 183, 44 N. E. 939; *Myers* v. *Binkley* (1901), 26 Ind. App. 208, 59 N. E. 333; *Union Central Life Ins. Co.* v. *Loughmiller* (1903), 33 Ind. App. 309, 69 N. E. 264. It is true that, at the close of all evidence, the fifth paragraph was dismissed by appellee. Nevertheless, as the issues were made by the pleadings, appellant was entitled to make the opening statement of its case to the jury and introduce evidence that it was a holder in due course before the introduction of any evi-

dence by appellee. We quote from *Huntington* v. *Conkey* (1860), 33 Barb. (N. Y.) 218, thus: "The right to begin, and the right to reply, in trials at the circuit, is unquestionably of much practical consequence. The privilege of making the opening statement of the case to the jury, and of making the closing argument, upon the evidence, is an advantage not unappreciated, or inconsiderately sought and claimed, by the counsel for litigating parties in courts of justice. In many cases it is of the highest importance, and particularly so where the facts are complicated and there is contrariety in the evidence, or it is nicely balanced and slight circumstances are likely to turn the scale." We do not want to be misunderstood. A situation might arise under the pleadings and evidence that it would be apparent from the record that no injury resulted, and we could say that a right result was reached and the error was harmless. In this case, we have a trial by jury. The question of whether appellant was a holder in due course for value involved the good faith of appellant in accepting the notes. This called upon the jury to weigh carefully the acts of the officers of appellant and the legitimate inferences to be drawn therefrom. The court permitted appellee to introduce evidence before the introduction of evidence by appellant of alleged fraudulent representations of the payee in procuring the execution of the two notes. The members of our profession are not unmindful of the impression such evidence has on the minds of the jurors. When the evidence was concluded, counsel for appellee apparently realized that error was committed by the court at their instance and request, and, in order to obviate the error, dismissed the fifth paragraph of answer and requested the court to instruct the jury to disregard the evidence of fraud, which was done by the court, in most general terms by instruction No. 11. The court did not attempt by the instruction to point

out the evidence of the alleged fraud which had been admitted. The vice of the situation is that the order in which the trial should have been conducted was not followed. We cannot say, as appellee would have us do, that the error was cured by the subsequent action of the court.

The only answer of appellant remaining in the case was denominated "no consideration." An examination of the allegations of the third paragraph of answer discloses that certain allegations contained therein, standing alone, might support a different theory than "no consideration." However, appellee in no uncertain terms, in the answer itself, informed the court and appellant that his theory was no consideration. Appellee will be held to the theory so adopted by him. *Cool* v. *McDill* (1906), 38 Ind. App. 621, 78 N. E. 679.

We direct our attention to the cause for a new trial that the evidence is not sufficient to sustain the verdict, keeping in mind that the only issue is that of no consideration and that appellant had knowledge of such fact at the time it purchased the notes in question. We have evidence to the effect that appellee gave an order in writing for one pair of "Windswept Quality Silver Foxes," for which he agreed to pay $1,500; that he (appellee) agreed to all of the terms and conditions of a contract which were a part of the order; that appellee inclosed his check for $500 as first payment, with the agreement to pay the balance of $1,000 with two notes bearing six per cent interest, which were inclosed. The contract was of the tenor as follows: That "Windswept Farms" agreed to: (1) Acknowledge and send to purchaser by mail an exact copy of this order contract upon its acceptance; (2) assign to purchaser the foxes purchased under the "order contract" and all increase resulting therefrom as soon as 75 per cent of their purchase price was paid; (3) to furnish purchaser with final

registration papers as soon as received from Registering Association and all money due in accordance with the order contract was paid; (4) furnish pens, dens, feed, care and attend to the mating and breeding of all foxes ranched for purchaser; (5) ranch all puppies born to foxes ranched for purchaser free of charge until October 1 of the year in which born; (6) to guarantee the life of the foxes purchased under the order contract for one year, and 100 per cent animal increase during the next breeding season, when the foxes are ranched for purchaser for the consideration of $500 per pair additional; (7) to ship foxes f. o. b. "Windswept Farms" ranches when purchaser has made necessary arrangements and complied with all the terms and conditions of this order contract; (8) to pay the duty of 15 per cent in the event the foxes were in the Canadian ranches; (9) to ranch free all foxes purchased until October 1, 1926. The purchaser agreed to pay: (1) Ranching charges in advance on the foxes purchased at the rate of $200 a pair each year—one-half on October 1, and one-half in April, providing the foxes were ranched by "Windswept Farms"; (2) give "Windswept Farms" two months' notice before October 1 of any year in which delivery of the foxes was to be made—October 1 to December 1 of each year being the customary shipping period—or at any other time agreed to by "Windswept Farms." The order contract was signed by appellee May 15, 1926, and approved and accepted by "Windswept Farms" May 19, 1926.

Did the contract contain stipulations binding upon "Windswept Farms" and appellee which constituted a valuable consideration? Consideration, that is, "a valuable consideration, in the sense of the law, may consist either in some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered or undertaken by the other." 3 R. C. L. 930. See, also,

*Abelman* v. *Haehnel, Admr.* (1914), 57 Ind. App. 15, 103 N. E. 869.

It is recognized by all authorities that an agreement to do something, as well as mutual promises be- ■ tween the parties, affords a sufficient considera- tion for the giving of commercial paper.

Under the stipulations and agreements between the "Windswept Farms" and appellee, as evidenced by the written contract, the "Windswept Farms" prom- ■ ised and agreed, upon the payment of a certain sum of money, to assign, attend to the breeding, ranch free and .deliver one pair of foxes, and appellee likewise promised and agreed to do certain things, all as heretofore mentioned. Thus, by the several stipula- tions of contract containing mutual promises, a valuable consideration existed. *American Automobile Co.* v. *Perkins* (1910), 83 Conn. 520, 77 Atl. 954; *Hawkins* v. *Windhorst* (1910), 82 Kans. 522, 108 Pac. 805; *Marling* v. *FitzGerald* (1909), 138 Wis. 93, 120 N. W. 388, 23 L. R. A. (N. S.) 177, 131 Am. St. 1003; *Siegil, etc., Co.* v. *Chicago, etc., Bank* (1890), 131 Ill. 569, 23 N. E. 417, 7 L. R. A. 537, 19 Am. St. 51; *Tradesmen's Nat. Bank* v. *Curtis* (1901), 167 N. Y. 194, 60 N. E. 429, 52 L. R. A. 430; *Board of Trustees, etc.,* v. *Anderson* (1878), 63 Ind. 367, 30 Am. Rep. 224; *Farber* v. *National, etc., Iron Co.* (1894), 140 Ind. 54, 39 N. E. 249.

In this case, there is evidence to the effect that "Windswept Farms" never performed the stipulations of the contract and thereby breached the same. ■ The failure to perform the several things which the "Windswept Farms" agreed to do constituted a failure of consideration. *Sanford* v. *Davis* (1876), 54 Ind. 45; *Barnes* v. *Stevens* (1878), 62 Ind. 226; *Jeffries* v. *Lamb* (1880), 73 Ind. 202; *Booth* v. *Fitzer* (1882), 82 Ind. 66. In the case of *Shirk* v. *Neible* (1901), 156 Ind. 66, 59 N. E. 281, 83 Am. St. 150, the Supreme Court said:

"An answer of no consideration, therefore, advises the court that the contract sued on is not enforceable because it has no foundation to rest upon, and it has been repeatedly held that, under such a plea, the defense will fail if it is shown there was any consideration whatever for the contract. The amount of it is immaterial. . . . While, upon the other hand, an answer of fraud, or failure of consideration, travels upon an entirely different theory. An answer of failure of consideration implies that there was a consideration sufficient to support the contract, but that it has subsequently failed in whole or in part without fault of the defendant."

In this case, appellee dismissed his paragraph of answer of failure of consideration. The jury was not authorized under the law to find that there was a *failure* of consideration under an answer of no consideration. *Tyler* v. *Anderson* (1886), 106 Ind. 185, 6 N. E. 600.

We omit discussion of the other alleged errors.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.