ALBRIGHT v. HUGHES

[No. 16,192. Filed April 17, 1940.]

652

*Slaymaker, Merrell & Locke, Neal, Williams & Ullum,* and *Cox, Bain & Cox* (of counsel), for appellant.

*Laurence H. Hinds, McTurnan & Higgins,* and *Thomas E. Kane,* for appellee.

STEVENSON, J.—The appellee herein, as plaintiff below, filed a complaint against the appellant to recover one-half of the commissions due on certain policies of insurance written on the life of William Ray Adams.

The case was tried on the first and third paragraphs of complaint which alleged generally that the appel-

lant and appellee were, on March 1, 1923, engaged in the business of selling life insurance and were both acting as agents for the Northwestern Mutual Life Insurance Company. The appellee at that time resided at Rockville, Indiana, and the appellant lived in Indianapolis. The appellee further alleged in his complaint that he met William Ray Adams in Rockville, Indiana, and found that he was a prospective purchaser of a large amount of life insurance. Thereafter, the appellee entered into an agreement with the appellant to the effect that both of them would pursue the solicitation of Mr. Adams for the purchase of insurance and each would receive one-half of any commissions earned by reason of any insurance which either or both of them might write or cause to be written on his life. Appellee further averred that as a result of such continued solicitation on the part of the parties that the said Adams did purchase $400,000.00 of life insurance; that the appellant collected the commission thereon and has failed and refused to pay over to the appellee one-half of said amount.

Demurrers were overruled to the first and third paragraphs of this complaint and this action of the trial court constitutes the first two assignments of error on appeal. Answers were filed in twelve paragraphs, to which replies in two paragraphs were addressed. On the issues thus formed the case was submitted to a jury for trial which returned a verdict for the appellee in the sum of $6,000.00. A motion for new trial was filed and overruled after the appellee filed a remittitur of $850.00. Judgment was accordingly entered for $5,150.00.

The appellant under his first assignment of error charges that the trial court erred in overruling the demurrer to the third paragraph of the appellee's complaint. The appellant contends that this is error

for the reason that the third paragraph of complaint does not allege that the contract relied upon was in force when the contract of insurance was obtained. The memorandum accompanying the demurrer does not present this question but proceeds wholly upon the theory that the time of actual performance of the contract sued upon was not fixed by the parties and therefore a reasonable time was contemplated. The appellant contends that since the complaint shows on its face that six years passed between the time of the agreement and the writing of the insurance, such a period was prima facie unreasonable as a matter of law and therefore the contract had terminated by reason of the lapse of time.

This same contention is made in the memorandum supporting the demurrer addressed to the first paragraph of the appellee's complaint, the overruling of which constitutes the appellant's second assignment of error. Having failed to specify in his memorandum that the complaint was defective for failure to allege that the contract sued upon was in force at the time the application for insurance was obtained, the appellant has waived the right to question now either paragraph of complaint by reason of such defect. Sec. 2-1007 Burns Indiana Statutes 1933, §111 Baldwin's 1934. The contract in suit not having specified the period of its duration may be considered in force for a reasonable time. What constitutes a reasonable time in which a contract is to be performed is generally a *question of fact* for the jury to determine. "What is a reasonable time within which an act is to be performed when the contract is silent upon the subject depends upon the subject matter of the contract, the situation of the parties, and the circumstances attending the performance." 12 Amer. Juris. 854, §299; see also *Gibson*

*Co.* v. *Morton* (1928), 88 Ind. App. 685, 148 N.E. 430; *Johnson* v. *Staley* (1903), 32 Ind. App. 628, 70 N.E. 541. The court did not err, in our opinion, in overruling the demurrers to the first and third paragraphs of complaint.

The overruling of appellant's motion for new trial constitutes the third assignment of error.

Under propositions, points and authorities, the appellant submits sixty-three propositions in support of the errors assigned. For the purposes of this case it will not be necessary to discuss these propositions separately. They are addressed in the main to the assigned error in overruling the motion for a new trial. Generally speaking, it is sufficient to say that the appellant relies upon the propositions that the evidence does not show a valid and enforceable contract between the parties upon which to predicate a recovery. The appellant contends that this is true for the reason that the time of the performance was not fixed, that it was lacking in mutuality, that no consideration was shown, nor do the facts show a joint adventure.

There is evidence in the record from which the jury might have found that in 1923 the parties hereto entered into an agreement by the terms of which any commissions on insurance written by either or both of the parties on the life of Mr. Adams should be equally divided. This agreement was made in the presence of the state agent for the Northwestern Mutual Life Insurance Company and in the years following, Mr. Adams was contacted from time to time by both parties with reference to the purchase of insurance. In 1927, the appellant suggested that the appellee refrain from further solicitation of Mr. Adams until such time as he was ready to purchase insurance and when that time arrived, the appellant promised to notify the appellee in order that he might be present

when the application was signed. The appellant and his partner sold Mr. Adams a policy of insurance on the .... day of March, 1929, and the appellant collected the commissions therefor.

There is evidence from which the jury might have found that there was due the appellee as his one-half of commissions actually paid to the time of the trial $5,470.30. The first question presented, therefore, is whether or not the agreement between the parties made in 1923 was so indefinite and uncertain as to prevent the same from constituting a valid and binding contract. Contracts of this nature are not uncommon. Brokers, agents, and others working on a commission basis frequently enter into agreements by which commissions earned on any item of business are agreed to be divided. These agreements are sometimes designated as particular partnership agreements. Such a partnership is defined as "one where the parties have united to share the benefits of a single individual transaction or enterprise." *Gilmer* v. *Graham* (1932), (Texas), 52 S.W. (2d) 263. Such contracts are not lacking in mutuality nor void for want of consideration. As was said in the case of *Young* v. *Millon* (1916), (Mo.), 183 S.W. 355: "With this provision in the contract that the parties were to work together and divide their commissions, it cannot be said that the contract is either lacking in mutuality or void for lack of consideration." Again in the case of *Davies* v. *Everett* (1922), (Colorado), 209 Pac. 799, the appellee employed the appellant to assist in the sale of certain real estate and promised him one-half of the commission received from the sale of the land. The appellant made the sale and collected and kept all of the commission. He contended on appeal from a judgment against him for one-half of the commission that there was no consideration for such a contract. The

court in affirming the case held that "there was undisputed consideration for the promise of the defendant to pay one-half of the commission to be earned by him." In the case of *Wolcott* v. *Wise* (1921), 75 Ind. App. 301, 130 N.E. 544, the appellant, who had been employed to secure a tenant for certain lots, placed the renting of said lots in the hands of the appellee with an agreement to share with him any profits derived from said rental. The commission was to be all over $50.00 per month received for rental from said lots. The appellee succeeded in leasing the lots for a period of twenty years at a rental of $60.00 per month. This court held that the agreement to share in these profits was a valid, binding, and enforceable one.

It is our opinion that there was evidence in the record sufficient to show that the parties hereto by their mutual promises, established a contract, enforceable as such at the time it was made. *Salt Springs Natl. Bank* v. *Schlosser* (1930), 91 Ind. App. 295, 171 N. E. 202.

The appellant contends further that even though the parties entered into a contract in 1923 by the terms of which they agreed to divide the commissions on any insurance written for Mr. Adams by either or both of them, yet such contract was intended to continue in force for a reasonable time only, and the same was subsequently abandoned by the parties. Conceding that no time was fixed in the agreement as to the time of performance, yet the evidence does not conclusively show an abandonment of the project.

Adopting the evidence most favorable to the verdict, it appears from the record that the parties called on Mr. Adams together on two or three occasions after their first visit, on one of which trips Mr. Adams said, "You fellows keep in touch with me, I might

give you some business sometime." There is further evidence that the appellee called on Mr. Adams frequently thereafter and on his various trips to Indianapolis he talked with the appellant about the progress of this case. In September, 1927, the appellee met the appellant in the general agent's office at Indianapolis, at which time the Adams case was again discussed. On this occasion the appellant suggested that he would be glad to continue contacting Mr. Adams and suggested that appellee leave the matter entirely to him, and stated that "whenever lightning struck" he would call the appellee. He further stated that Mr. Adams might be ready to sign an application at any time. This conversation was related to the secretary in the general agent's office in the presence of both parties and the secretary related the statement made to her as follows: "Hughes said, 'Chet has agreed to take care of this case and I won't need to bother about it and he will let me know when it is ready to break.'" Following this time and at frequent intervals, the appellee met the appellant in the general agent's office and at such times the solicitation of Adams was discussed. This arrangement continued until the time the insurance was written.

In view of this evidence, it is our opinion that the jury might well have concluded that the contract had not been abandoned by the parties and had not terminated by reason of the lapse of time. The rule is generally recognized that the construction placed upon a contract by the parties thereto will be adopted by the court unless it be at variance with a correct legal interpretation of such contract. *Scott v. Lafayette Gas Co.* (1908), 42 Ind. App. 614, 86 N.E. 495.

It seems clear to us that the conduct of the parties as disclosed by the above recited evidence cannot be

reconciled with the theory of abandonment nor with the contention that the contract had expired by reason of the lapse of time. The time of performance and the time that the parties intended to be bound by the agreement has been made certain by their conduct. "This conduct is an exposition of the contract by the parties themselves and they best knew what their intention was and what they believed their contract to mean." *Emshwiller* v. *Tigner* (1896), 16 Ind. App. 133, 137, 44 N.E. 811.

In view of what we have said there was no error in the giving of Instruction No. 1 as requested by the appellee which informed the jury that:

". . . a contract which the parties were continuing to regard and treat as binding on them after a six months' period would be deemed not to be affected by the custom, if any, that such contract terminate in six months."

Neither does this instruction, when taken in its entirety, assume the existence of any controverted fact. The instruction in which the above language appears was one which informed the jury as to the effect of a custom on contracts generally and the instruction in its entirety is a fair statement of the law applicable thereto.

Complaint is further made by the appellant of the giving of Instructions No. 2 and No. 3 tendered by the appellee and given by the court. These instructions informed the jury as to the effect of a local custom or usage upon a contract and the appellant contends that they were erroneous because they were not within the issues. The third paragraph of answer alleged a general custom or usage among insurance agents to the effect that contracts share commissions terminated after six months of unsuc-

cessful solicitation of a prospect. The instructions complained of were clearly applicable to the issues raised by this paragraph of answer and to the evidence offered as to the existence of such a custom.

Complaint is further made of the giving of Instruction No. 4. This instruction reads as follows:

"A contract generally terminates only when the parties decide it shall, or do something to terminate it sooner. A contract without any definite time to operate is presumed to be intended to be effective as long as may be reasonably necessary to accomplish its intended purpose. If a contract without specific time for termination is set in operation and the parties continue from time to time to acknowledge its existence and purport to maintain the contract relation, it will continue in effect during all of such time; and if a contract is made to continue until the parties terminate it by mutual agreement, it does not expire by lapse of time unless the parties mutually agree that it shall, or both treat it as expired."

The appellant contends that this instruction placed the burden upon the appellant to show a termination of the contract sued upon whereas the burden was on the plaintiff to affirmatively show that the contract was in force in March, 1929, when the insurance was written. It is our opinion that this instruction is not subject to the objection suggested. The chief contention as disclosed by the pleadings and by the testimony offered in this case involved the time of termination of this agreement. The instruction complained of is a fair statement of the law as applicable to such issue.

Instruction No. 5 tendered by the plaintiff and given by the court is objected to for the reason that

it does not contain a statement to the effect that the burden is upon the appellee to show that the contract sued upon was in effect at the time the insurance was written. We have examined Instruction No. 5 in the light of this criticism and find that said instruction is not mandatory in form and deals generally with the right of the parties to determine in what other insurance companies any excess insurance should be placed if an application should be procured for more than the Northwestern Mutual Life Insurance Company would take. The instruction fairly states the law as to the right of the appellee to share in such commissions on the insurance written on Mr. Adams "during the effective period of said contract." It is our opinion that this instruction is sufficiently broad to meet the objection that it does not require proof that the contract was in force at the time the application was procured. The appellant does not tender any instruction which specifically covered the subject-matter now urged in this objection. If he had desired a more complete instruction on the burden which rested upon the appellee to prove the continuation of the contract from the time of its inception to the procurement of the application it was the appellant's privilege and duty to tender such instruction. Having failed so to do, he cannot now complain where the issues involved are fairly covered by the instructions given. We have read the instructions in their entirety and find repeated references as to the duty to establish the fact that the contract in suit continued in effect to the date of the application.

Complaint is made of Instruction No. 6 tendered by the appellee and given by the court for the reason that it is not confined to or dependent upon facts as "shown by the evidence." This instruction deals gen-

erally with the rights of the parties after the appellant had asked the appellee to refrain from further solicitation of the prospect. This instruction was a conditional instruction to the effect that "if the defendant thereafter asked the plaintiff to refrain from soliciting said Adams," etc., then certain liabilities would attach "if said contract continued in effect." It is our opinion that this instruction so conditioned is not subject to the objection urged. The court in other instructions informed the jury that they should consider only such facts as were established by the evidence and that the burden of proof was upon the appellee to establish the facts necessary for recovery by a preponderance of the evidence. It is our opinion, therefore, that the jury was not misled by the failure of the instruction to contain the phrase "as shown by the evidence."

Complaint is made of Instructions No. 7 and No. 10, tendered by the appellee and given by the court for the reason that they assume the existence of facts in controversy. We do not believe these instructions are subject to this criticism.

The appellant further contends that the evidence fails to show that the appellee had any right in 1929 to solicit insurance in the city of Indianapolis and that because of such lack of authority, the contract became unenforceable as to the appellee. There is evidence in the record to the effect that the appellee in 1929 was a licensed agent in the state of Indiana for the purpose of selling life insurance, which license gave him such authority anywhere in the state of Indiana. It is further disclosed that his agency contract gave him exclusive charge of soliciting applications in Parke, Putnam, and a part of Vermillion Counties in 1923 and that in 1929 his contract

with the Northwestern Mutual Life Insurance Company did not give him authority to write insurance in Marion County, yet these contracts provided that the appellee might solicit insurance outside the territory covered by his contract with the written consent of the general agent of the company. There is further evidence to the effect that the general agent consented and gave his permission to the appellee to solicit Mr. Adams in Marion County. While there is no evidence in the record disclosing that this consent was in writing, yet this was a matter between the Northwestern Mutual Life Insurance Company and the appellee, and was of such a character as might be waived by the insurance company. If they gave their consent to such solicitation, the appellant is not in a position to complain thereof in this action and the appellee's acts in such solicitation under such circumstances were not illegal. The court did not err in giving Instructions No. 11 and No. 15 tendered by the appellee on this phase of the case.

The appellant complains of the giving of many other instructions on the grounds that they are confusing, misleading, and prejudicial. Without discussing each of these instructions separately in the light of objections urged, it is sufficient to say that we have read the instructions in their entirety and believe that when so taken they fairly state the law as applicable to the issues made and the facts presented in this case. The court gave the jury 52 instructions and it has not been made to appear that the jury was misled or the rights of the appellant prejudiced by any of the instructions about which complaint is made.

The appellant further complains as to the admissibility of certain evidence for the reason that the

questions called for and the answers given were statements of a conclusion. Generally speaking, questions calling for the conclusions of a witness are objectionable. *Kraus* v. *Weaver* (1931), 191 Ind. 133, 130 N.E. 800. However, it does not appear that the particular answers. so solicited were so harmful to the appellant as to constitute reversible error. A witness was asked as to the authority of the appellee to write insurance in Marion County and to the question, "Did he have such authority?" answered, "Yes." This answer, when viewed in the light of the witness' former testimony that she was present when the state agent for the company gave such authority to the appellee, although technically inadmissible, does not in our opinion constitute reversible error in this case.

It is our opinion, therefore, that the court did not err in overruling the appellant's motion for new trial.

Finding no reversible error, the judgment of the trial court is affirmed.