**INLAND STEEL, A Subsidiary of Inland Steel Industries, Inc., Appellant (Defendant Below),**

**v.**

**Donald E. PEQUIGNOT, Appellee (Plaintiff Below).**

**No. 35A04–9206–CV–189.**

Court of Appeals of Indiana, Fourth District.

Feb. 16, 1993.

Transfer Denied May 12, 1993.

---

Edward L. Murphy, Jr., Philip A. Renz, Larry L. Barnard, Miller Carson & Boxberger, Fort Wayne, for appellant.

Daniel F. Diggins, Emerick & Diggins, P.C., Kendallville, for appellee.

MILLER, Judge.

At about 3:40 p.m. on August 14, 1990, a tractor-trailer driven by Gregory Hinds at about forty miles per hour (40 mph) ran a red light and was struck by a motorcycle operated by Donald Pequignot. The tractor-trailer was owned by Alex Kolb and leased to Combined Transport Systems, Inc. It was carrying a single 48,000 pound coil of steel being shipped by Inland Steel from East Chicago to Prestrip Metals in Kenton, Ohio. Pequignot hit the rear underside of the trailer and is now a paraplegic. Pequignot sued Hinds, Kolb, Combined Transport and Inland Steel. Pequignot eventually filed a Stipulation of Dismissal with Prejudice of Hinds, Kolb and Combined Transport and then filed an amended complaint which alleged that Inland was liable because: (1) there was a master-servant relationship between Inland and Combined Transport; (2) Inland and Combined Transport were engaged in a joint venture; (3) the negligent acts of Combined Transport were illegal (negligence *per se*); and (4) the hauling of steel is inherently dangerous activity and therefore imposed a non-delegable duty on Inland.

Inland moved for summary judgment claiming that the undisputed facts did not support any of Pequignot's theories; thus, Inland was entitled to judgment in its favor as a matter of law. The trial court denied this motion and Inland petitioned to file a certified interlocutory appeal. The trial court certified Inland's petition and we accepted jurisdiction.

We find that Inland is entitled to judgment as a matter of law and reverse.[1]

## DECISION

In essence, Pequignot seeks to impose liability on the shipper of the steel coil, Inland Steel, for the acts of the driver, owner, and operator of the tractor-trailer. Pequignot asserts various theories of vicarious liability under which Inland Steel may be liable. Inland asserts that under the

---

**1.** Pequignot's Motion to Strike subsection D.1 and D.2 of Inland Steel's Reply Brief or, in the alternative, to allow Pequignot to amend his brief is hereby denied.

undisputed facts before the trial court, none of these theories can support a judgment against Inland Steel as a matter of law. Thus, Inland argues that its motion for summary judgment should have been granted.

Summary judgment proceedings are primarily designed to provide a speedy determination of whether a genuine issue of fact is present and must be tried. William F. Harvey 3 *Indiana Practice* 609 (1992 supp.). It is not itself a trial, but is for the determination of whether there is a genuine issue for trial. *Id.* at 609–610 *citing Crosby v. Oliver Corp.* (1949), S.D.Ohio, 9 F.R.D. 110. In summary judgment proceedings, the burden of production is on the moving party to show that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Pour v. Basic American Medical, Inc.* (1990), Ind.App., 555 N.E.2d 155 *reh'g denied.* The nonmoving party may rest upon his pleadings until the moving party establishes that no genuine factual issue exists. *Chrome Deposit Corp. v. Indiana Dept. of State Revenue* (1990), Ind.Tax, 557 N.E.2d 1110 *aff'g sub nom.* (1991), Ind., 578 N.E.2d 643. At this point, the burden of production shifts to the nonmoving party whose response must set forth specific facts indicating that there is an issue of material fact. *Id.* The nonmovant may not rest upon bare allegations made in the pleadings, but must respond with affidavits or other evidence setting forth specific facts showing that there is a genuine issue in dispute. *Sutton v. Sanders* (1990), Ind.App., 556 N.E.2d 1362; *Willsey v. Peoples Federal Sav. & Loan Ass'n of East Chicago* (1988), Ind.App., 529 N.E.2d 1199. If the nonmoving party fails to meet this burden, then summary judgment in favor of the movant is appropriate. *Chrome Deposit Corp., supra; Rogers v. R.J. Reynolds Tobacco Co.* (1990), Ind.App., 557 N.E.2d 1045 *reh'g denied.*

In reviewing a motion for summary judgment, we apply the same standard as the trial court. *Malachowski v. Bank One, Indianapolis* (1992), Ind., 590 N.E.2d 559, 562; *Jackson v. Blanchard* (1992), Ind.App., 601 N.E.2d 411, 414. Thus, no deference is given by us to the trial court's judgment. *Church Bros. Body Service, Inc. v. Merchants National Bank & Trust Co. of Indianapolis* (1990), Ind.App., 559 N.E.2d 328, 330. We accept as true facts alleged by the nonmoving party. *Pour v. Basic American, supra.* Facts and inferences must be liberally construed in favor of the nonmovant and all doubts must be resolved in the nonmovant's favor. *Harper v. Guarantee Auto Stores* (1989), Ind.App., 533 N.E.2d 1258 *trans. denied.* As noted by this court, due to the 1991 amendments to Ind.Trial Rule 56, we as a reviewing court are no longer free to search the entire record to support the judgment of the trial court. *Jackson v. Blanchard, supra,* at 415. It is only those portions of the record that were specifically designated to the trial court that comprise the record for review. *Id.* However, the 1991 amendments do not alter the structural burdens on the parties. *Id.* at 416. Their sole purpose is to substantially limit the scope of materials in the record the trial court may examine when determining the propriety of summary judgment and, correspondingly, what parts of the record we may properly consider on review. *Id.*

In addition, "[a]ppellate courts independently, and without the slightest deference to trial court determinations, evaluate those issues they deem to be questions of law. A *pure* question of law is one that requires neither reference to extrinsic evidence, the drawing of inferences therefrom, nor the consideration of credibility questions." Kenneth M. Stroud 4A *Indiana Practice* § 12.3 (1992 supp.) As noted by Professor Stroud, "appellate courts are *at least* as competent, if not *more* competent, than trial courts in deciding such issues, not to mention their duty as ultimate arbiters of the meaning and the extent of the law." *Id.* With the above in mind, we now address the issues presented.

## I. MASTER/SERVANT RELATIONSHIP

Pequignot alleged in paragraph 13 of his amended complaint that Hinds (the driver) was the agent and/or servant of Inland Steel. In its Motion for Summary

Judgment, Inland Steel submitted an affidavit from A. Gregg Duvall, the manager of distribution services for Inland Steel. R. 162–163. Attached to Duvall's affidavit and the subject of that affidavit is a copy of the contract between Combined Transport ("Carrier") and Inland Steel ("Shipper"). The contract clearly indicates that Inland did not have the right to control Hind's operation of the tractor-trailer. Under the express terms of the contract, Combined, not Inland, had the right to control Hinds. R. 164–176. Inland also designated portions of the depositions of Kolb and Hinds as well as an affidavit by Kolb showing that Hinds was an independent contractor associated with Kolb who in turn leased the tractor-trailer to Combined Transport. Kolb employed Hinds who in turn had to be approved by Combined Transport. R. 138 citing Kolb Deposition 5, 16.

In response to the affidavits and depositions designated by Inland in support of its motion, Pequignot submitted legal argument supported by citation to *Jack Ward Chevrolet, Inc. v. Richard F. Mikel* (1988), Ind.App., 525 N.E.2d 349 *trans. denied.* R. 199–200. Pequignot did not submit any *evidence* to dispute the affidavits and depositions designated by Inland. Pequignot did not designate any portion of the record to support his pleadings. In short, Pequignot simply rested on his pleadings. Thus, the uncontroverted facts before us and the trial court show that Combined Transport was an independent contractor and that no master/servant relationship existed between Inland Steel and Combined Transport. Lacking such a relationship, there could be no master/servant relationship between Combined Transport's servants, Kolb and Hinds, and Inland Steel.

Inland Steel established that it was entitled to summary judgment on this issue. The trial court erred in not granting Inland's motion.

## II. JOINT VENTURE

■ Pequignot alleged in his amended complaint that Inland Steel should be liable for his injuries because Inland Steel, Combined Transport, Kolb and Hinds were engaged in a joint venture for the manufacture and distribution of steel. A joint venture has been defined as an association of two or more persons formed to carry out a single business enterprise for profit. *Boyer v. First National Bank of Kokomo* (1985), Ind.App., 476 N.E.2d 895, 897. For a joint venture to exist, the parties must be bound by an express or implied contract providing for "(1) a community of interests, and (2) joint or mutual control, that is, an equal right to direct and govern the undertaking, that binds the parties to such an agreement." *Id.* at 898. A joint venture is similar to a partnership except that a joint venture contemplates only a single transaction. *Id.* A joint venture agreement must also provide for the sharing of profits. *Id.;* *Lafayette Bank and Trust Co. v. Price* (1982), Ind.App., 440 N.E.2d 759, 762.

Here, the only agreement before the trial court is the contract between Inland Steel and Combined Transport which establishes that Combined Transport is an independent contractor, that the acts contracted for are for the hauling of steel shipments at agreed rates, and that the term of the initial contract is for one year. R. 166. As in Issue I, Pequignot produced no evidence to: (1) support his allegation of a joint venture; or (2) contradict Inland's position. Pequignot submitted only argument and legal citation. Thus, as in Issue I, Pequignot merely rested on his pleadings and failed to meet his burden of production. Inland Steel was entitled to summary judgment on this issue. The trial court erred.

## III. ILLEGAL CONTRACT—NEGLIGENCE PER SE

■ Pequignot claims that Inland Steel should be liable for his injuries because Combined Transport had not registered one of its Interstate Commerce Commission Certificates of Authenticity with the State of Indiana as required by Ind.Code 8–2.1–18–9.[2] Pequignot concludes that Combined

2. **Interstate operations—operation within exempt commercial zone—Registration with Department.**

(a) A motor carrier may not operate motor vehicles upon any public highway within

Transport's failure to comply with this statute is *negligence per se* which makes its agreement with Inland Steel an illegal contract. Pequignot relies upon the an exception to the general rule—that one who employs an independent contractor cannot be held liable for the negligent acts of that contractor—when the act to be performed is illegal and where a party is by law or contract charged with a specific duty. *Cummings v. Hoosier Marine Properties, Inc.* (1977), Ind.App., 363 N.E.2d 1266, 1274.

■■■■ This issue involves a pure question of law: Whether Combined Transport's failure to register with the state Department of Revenue is *negligence per se* and, therefore, subjects Inland Steel to liability for Hinds' negligence. Under Indiana law, a non-excused or non-justified violation of a duty dictated by a statute is *negligence per se. Dawson by Dawson v. Long* (1989), Ind.App., 546 N.E.2d 1265, 1268 *reh'g denied, trans. denied.* However, in determining whether the violation of a statute constitutes negligence, the court must scrutinize the statute and consider "the purpose of the enactment, the persons whom it was intended to protect and the injuries which it was intended to prevent." *Reuille v. Bowers* (1980), Ind.App., 409 N.E.2d 1144, 1148 *quoting Smith v. Cook* (1977), Ind.App., 361 N.E.2d 197, 200. If these factors are not present, the violation of the statute does not amount to negligence. *Sheridan v. Siuda* (1971), 276 N.E.2d 883, 889.

■■■■ We note that *negligence per se* does not mean that there is liability *per se.* The violation of statutory duty is not actionable negligence unless it is also the *proximate cause* of the injury. *Dawson by Dawson, supra,* at 1269 (emphasis added). The violation of a statute raises no liability for injury to another unless the injury was in some manner the result of such violation. *Conway v. Evans* (1990), Ind.App., 549 N.E.2d 1092, 1095. In order to find that an injury was the proximate result of a statutory violation, the injury must have been a foreseeable consequence of the violation and would not have occurred if the requirements of the statute had been observed. *Ray v. Goldsmith* (1980), Ind.App., 400 N.E.2d 176, 179.

■■■■ Here, the contract between Inland Steel and Combined Transport was for the hauling of steel. Hauling steel is not an illegal act. As in *B.A. Kipp Co. v. Waldon* (1947), Ind.App., 75 N.E.2d 675, the work itself—hauling the steel—could have been performed lawfully. "The contract itself did not call for or necessarily involve any violation of the law." *Id.* at 676.[3] The contract also provided that Combined Transport was to be responsible "for complying with all laws of state, federal and local governments pertaining in any way to

Indiana in interstate commerce under a certificate of public convenience and necessity, or permit, issued to the carrier by the Interstate Commerce Commission, until the carrier has:
(1) Registered the certificate or permit with the department, unless the operations are specifically exempt under this chapter;
(2) Paid the appropriate filing fee specified under this chapter, unless the filing fee is waived by reciprocity; and
(3) Been issued an acknowledgement by the department which shall remain in effect until amended, suspended, cancelled or revoked.
(b) A motor carrier may not operate motor vehicles within the exempt commercial zones (as defined by the Federal Interstate Commerce Act [49 U.S.C. Section 1 et seq.]) or regulations adopted under that act without registering with the department as required by subsection (a) and the rules of the department.

["Department" originally referred to the state department of highways. I.C. 8–2–7–2 "Department" now refers to the department of state revenue. I.C. 8–2.1–17–6].
P.L. 1–1990, Sec. 104, effective March 20, 1990, deleted Subsec. (c), which read: "(c) A person who violates this section commits a Class C infraction." Wests (1992 supp.).

**3.** In *Waldon,* a plaintiff brought a personal injury action for injuries sustained as a result of an automobile accident. The plaintiff sought to impose liability upon a shipper for the negligent acts of a truck driver who had been employed as an independent contractor, but who lacked the proper permits to operate in the State of Indiana. As in the instant case, the plaintiff claimed that the shipper was liable because the truck driver was performing an illegal act by operating without a permit. The trial court agreed and we reversed.

this contract." R. 164. Liability under this exception to the general rule also requires the employer of an independent contractor to have knowledge of and sanction the illegal act at the time of contracting. *Cummings, supra,* at 1277. Pequignot does not provide us with any evidence that Inland Steel had knowledge of Combined Transport's failure to register.

Pequignot also argues that our decision in *Waldon* "is an anomaly based on fallacious reasoning which failed to recognize prior decisions, the public policy as set out in the Indiana Motor Carrier Act, and should not be followed." Pequignot's Brief at 13. Pequignot claims that the purpose of I.C. 8–2.1–18–1 et seq. is to protect the safety of the public highways by regulating commercial vehicles and, when properly implemented, the purpose of this statutory scheme is to protect the public.

It seems to us that the purpose of this statute is both to regulate motor carriers and to produce revenue, not to promote safety—as indicated by the change from "department of highways" to "department of revenue" and by the removal of the criminal penalty for failing to comply (part (c))—by the 1990 amendments. We fail to see how Combined Transport's failure to register with the department of revenue could in any way be considered the proximate cause of this tragic accident. Pequignot alleges, and Inland Steel does not dispute, that he struck a tractor-trailer driven by Hinds as it ran a red light at about 40 mph. This act is contrary to I.C. 9–4–1–35—disregarding a traffic signal—and was the immediate cause of Pequignot's injuries.

As a matter of law, Combined Transport's failure to comply with I.C. 8–2.1–18–9 is not *negligence per se*. The trial court erred in not granting Inland Steel's motion for summary judgment on this issue.

## IV. INHERENTLY DANGEROUS ACTIVITY

 Finally, Pequignot claims that, even if all of the above theories fail, Inland Steel is still liable because hauling 48,000 pound steel coils is inherently dangerous. An activity that is inherently dangerous or ultra-hazardous or abnormally dangerous imposes strict or absolute liability in tort upon the employer of an independent contractor because one cannot transfer the duty arising from the conduct. 74 Am. Jur.2d *Torts* § 16 (1974). In support of his contention, Pequignot submitted the affidavit of a trucking expert, Jerry Kreger. R. 181–185. In response, Inland argues that: (1) as a matter of law, hauling steel is not an inherently dangerous activity; and (2), even if it was inherently dangerous, Pequignot's injuries were not caused by the hauling of steel, but by the negligent acts of Hinds (the driver).

Although the parties use the terms "inherently dangerous or intrinsically dangerous" interchangeably, it is apparent to us they are alluding to what the First Restatement of Torts § 519 (1938) referred to as "ultra-hazardous" activity and which the Restatement (Second) §§ 519 & 520 (1977), calls "abnormally dangerous" activity to impose strict liability. As we noted in *Erbrich Products Co., Inc. v. Wills* (1987), Ind.App., 509 N.E.2d 850 *reh'g denied, trans. denied* (1988), "this difference in nomenclature is of no importance." *Id.* at 853 *citing* W. Prosser and W. Keeton, *Handbook of the Law of Torts* § 78 at 555–556 (5th ed. 1984).[4] This doctrine,

4. *Erbrich* is an interlocutory appeal of the denial of summary judgment involving questions of both ultra-hazardous activities and nuisance. Erbrich Products operated a small manufacturing plant in Indianapolis where products such as mustard, vinegar, bluing, ammonia, and bleach were made. Erbrich had used the same method for manufacturing bleach for over fifty years. Chlorine gas was introduced into a solution of caustic soda and water. The flow of the gas was controlled by manual and automatic valves.

At about noon on October 12, 1984, an excessive amount of chlorine gas escaped and was released by the plant's ventilation system. The cause was unknown and this was the first incident of its kind at the plant. The chlorine gas injured many of the people living near the plant and some property damage also occurred.

The issue relative to the instant case was whether the manufacture of chlorine bleach by use of chlorine gas constitutes an ultra-hazardous or abnormally dangerous activity for which strict liability will be imposed. After an exten-

which evolved from *Rylands v. Fletcher* (1868), L.R. 2 H.L. 330, provides:

(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

Restatement (Second) § 519.

Section 520 of the Second Restatement provides:

In determining whether an activity is abnormally dangerous, the following factors are to be considered:

(a) Existence of a high degree of risk of some harm to the person, land or chattels of another;

(b) Likelihood that the harm that results from it will be great;

(c) Inability to eliminate the risk by the exercise of reasonable care;

(d) Extent to which the activity is not a matter of common usage;

(e) Inappropriateness of the activity to the place where it is carried on;

(f) Extent to which its value to the community is outweighed by its dangerous attributes.

Restatement Second § 520. "The general principle derived from *Rylands* is that where a person chooses to use an abnormally dangerous instrumentality, that person is strictly liable without a showing of negligence for any injury *proximately caused* by that instrumentality." 57A Am. Jur.2d *Negligence* § 396 (1989).

Pequignot also argues that this issue is inappropriate for summary judgment because it involves questions of fact that should be decided by a jury. "However, the issue of whether an activity is abnormally dangerous is a question of law for the court to decide." *Erbrich Products, supra,* at 857 (citations omitted).

 When deciding whether to impose strict liability, we must not look at the abstract propensities of the particular substance involved, but must analyze the defendant's activity as a whole. *Id.* at 856. "If the rule was otherwise, virtually any commercial or industrial activity involving substances which are dangerous in the abstract automatically would be deemed as abnormally dangerous. This result would be intolerable." *Id.*

We find that § 520(c) as well as our reasoning in *Erbrich Products* is dispositive of this question. Hauling steel, or any other heavy load, is not "inherently dangerous," "intrinsically dangerous," "ultra-hazardous" or "abnormally dangerous" as these terms are used in strict liability. It is readily apparent that if the driver of the truck, Hinds, had used reasonable care, this tragic accident would not have happened. It is undisputed that Hinds ran a red light at 40 mph. It is also clear to us that the coil of steel was not the proximate cause of Pequignot's injuries. While riding a motorcycle, he hit a tractor-trailer carrying 48,000 pounds of steel and traveling at 40 mph. He hit the trailer—the coil of steel did not fall off the trailer and hit him. It would make no difference if the tractor-trailer was carrying 48,000 pounds of steel or sand or even wood chips. When a motorcyclist strikes or is struck by a tractor-trailer running a red light, especially one traveling at 40 mph, the motorcyclist is going to come out the loser—if at all.

Inland Steel is entitled to summary judgment on this issue as well. We therefore reverse the judgment of the trial court and remand with instructions to enter summary judgment in favor of Inland Steel on all theories of law alleged in Pequignot's amended complaint.

Reversed and remanded.

CHEZEM, and NAJAM, JJ., concur.

*Erbrich Products, supra,* 852–853.

sive analysis of the doctrine, we found that it did not, because reasonable care could have avoided the accident.