John L. BYRD and Deanna J. Byrd,
Appellants–Plaintiffs,

v.

E.B.B. FARMS, Robert Caldwell and Randy Schuck, Appellees–Defendants.

No. 81A01–0207–CV–250.

Court of Appeals of Indiana.

Sept. 26, 2003.

David W. Stone IV, Stone Law Office & Legal Research, Anderson, IN, Richard E. Federico, Federico Law Offices, Hagerstown, IN, Attorneys for Appellants.

Stephen E. Schrumpf, McNeely, Stephenson, Thopy & Harrold, Shelbyville, IN, Attorney for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs, John E. Byrd and Deanna J. Byrd (collectively, "the Byrds"), appeal the trial court's entry of summary judgment in favor of Appellees–Defendants,[1] E.B.B. Farms (E.B.B.) and Robert Caldwell[2] (Caldwell).

We affirm.

### ISSUES

The Byrds raise one issue, which we restate as follows: whether the trial court erred in determining that the business relationship between E.B.B., Caldwell and Schuck was one of farming on shares, which is a landlord-tenant relationship.

### FACTS AND PROCEDURAL HISTORY

On February 20, 2001, the Byrds filed a complaint in Union County, Indiana, against E.B.B., Caldwell, and Schuck. In their complaint, the Byrds alleged that they owned a tree farm, which is adjacent to farmland owned by E.B.B., managed by Caldwell, and farmed by Schuck. The Byrds alleged that in the spring of 2000, Schuck, at the direction and with the concurrence of Caldwell, sprayed herbicide on E.B.B. farmland, known as E.B.B.—3. The complaint further argued that the herbicide was sprayed at a time when the wind velocity was great; therefore, the excess herbicide was blown onto the Byrds' tree farm and damaged most of their nursery stock.

On April 16, 2001, E.B.B. and Caldwell filed their answer to the Byrds' complaint. In their answer, E.B.B. and Caldwell denied the allegations of negligence and asserted comparative fault and failure to mitigate damages by the Byrds as defenses. Additionally, E.B.B. and Caldwell claimed that the damage was caused by the actions of other property owners.

On January 8, 2002, E.B.B. and Caldwell filed their Motion for Summary Judgment. On February 20, 2002, E.B.B. and Caldwell filed their Motion to Strike Brief and Affidavit of Plaintiffs In Opposition to Defendants' Motion for Summary Judgment. On February 21, 2002, the Byrds filed their response to E.B.B. and Caldwell's Motion for Summary Judgment.

On February 26, 2002, a hearing on the Motion for Summary Judgment was held. On April 24, 2002, the trial court granted E.B.B. and Caldwell's Motion for Sum-

---

1. We note that Randy Schuck (Schuck) was a Defendant to this action. However, Schuck did not file a Motion for Summary Judgment individually or collectively with E.B.B. and Caldwell. Therefore, Schuck is not one of the Appellees–Defendants to this case.

2. Caldwell was employed as E.B.B.'s manager.

mary Judgment. On that same date, the trial court issued its Findings of Fact and Conclusions of Law, which state, in pertinent part:

### Findings of Fact

1. [The Byrds'] own property in Union County, Indiana, on which the Byrds raise and sell trees.

2. E.B.B. Farms is located in Union County, Indiana, and a portion of E.B.B.'s property adjoins the Byrd Tree Farm.

3. Defendant Caldwell manages E.B.B., including the property generally known as [E.B.B.—3] situated adjacent to the Byrd Tree Farm.

4. Schuck farms the E.B.B. [farmland] next to the Byrd Tree Farm.

5. Mr. Caldwell does not supervise Mr. Schuck's farming operation.

6. E.B.B. and Mr. Schuck had verbal and written agreements providing that farming profits from [E.B.B.—3] would be divided equally with half of the profits going to E.B.B., and half of the profits going to Mr. Schuck.

7. Mr. Schuck is compensated when he takes grain to Cincinnati, [Ohio] where he sells it; half of the receipts go to E.B.B., and half of the receipts go to Mr. Schuck.

8. [E.B.B.] and [Caldwell] do not provide worker's compensation insurance for [Schuck].

9. [E.B.B.] and [Caldwell] do not provide any health insurance for [Schuck].

10. [E.B.B.] and [Caldwell] do not provide insurance for any of [Schuck's] farm equipment.

11. [E.B.B.] supplies the land, and [Schuck] provides the farm equipment and labor.

12. [E.B.B.] pays one-half of the cost of the chemicals sprayed on the crops, and [Schuck] pays one-half.

13. [E.B.B.] and [Caldwell] do not pay [Schuck] for applying the chemicals.

14. [Schuck] provides his own farming equipment.

15. [Schuck] provides for repairs and maintenance of all the farm equipment he uses, other than a weed cutter that is maintained by E.B.B. employees.

16. [E.B.B.] does not provide fuel for operation of farm equipment; [Schuck] purchases his own fuel.

17. [Caldwell] and the owners of [E.B.B.] do not consider [Schuck] to be an employee of [E.B.B.].

18. [Schuck] considers himself a tenant renting E.B.B. [farmland]; he does not consider himself an employee of E.B.B.

19. [Schuck] does not have his farming methods approved by [Caldwell].

20. [Caldwell] does not make any decisions regarding the [E.B.B.—3] farm.

21. [Caldwell] was in Florida from October, 1999, until sometime in May, 2000. In the performance of his duties, [Caldwell] checked in by phone about once a month.

22. [Schuck] makes the farming decisions for the farm known as [E.B.B.—3].

23. [Schuck] decides what crop to grow on the farm each year.

24. [Schuck] believes that he has a free hand to raise the crops he chooses in the manner he chooses on the farm known as [E.B.B.—3].

25. [Schuck] does not consult with [Caldwell] or anyone associated with E.B.B. regarding which fertilizer and herbicide he uses on the [E.B.B.—3] farm.

26. [Schuck] does not consult with [Caldwell] or anyone associated with E.B.B. regarding when to apply fertilizer and herbicides on the [E.B.B.—3] farm.

27. [Caldwell] did not authorize [Schuck] to spray any kind of chemical spray in the spring of 2000.

28. [Schuck] might consult with [Caldwell] regarding major purchases, and about selling grain, however, [Caldwell's] policy has always been to allow [Schuck] to make the decisions.

29. [Schuck] has had a chemical applicator's license continuously since licensing was originally required approximately 6 or 8 years ago.

30. [Caldwell] knew that [Schuck] was licensed to apply chemicals at the time [Caldwell] hired [Schuck] to operate the farm known as [E.B.B.—3].

31. [Caldwell] had no knowledge about the chemicals applied to the crops on the [E.B.B.—3] farm in the spring of 2000.

32. [Schuck] decided what chemicals to apply to the crops on the [E.B.B.—3] farm in the spring of 2000.

33. [Schuck] decided what dates to spray the chemicals on [E.B.B.—3] in the spring of 2000.

34. [Schuck] sprayed chemicals on the portion of [E.B.B.—3] that adjoins Byrd's Tree Farm on May 9, 2000, at 6:00 a.m., and on May 11, 2000, at 5:00 a.m.

35. [Schuck] used his own equipment consisting of a tractor and pull-type sprayer to spray the chemicals on the [E.B.B.—3] [farmland] in the spring of 2000.

36. [Schuck] performed and paid for the maintenance on the tractor and sprayer that he used to spray the chemicals on the [E.B.B.—3] [farmland] in the spring of 2000.

37. [Caldwell] has never had a problem with [Schuck] over-spraying chemicals or with wind drift of the chemicals applied by [Schuck].

*Conclusions of Law*

1. The law is with the Defendants, [E.B.B.] and [Caldwell], and summary judgment in favor of these two (2) Defendants, only, is hereby granted.

2. Summary judgment is properly granted when the pleadings and other matters of record reveal that there is no genuine issue or dispute as to a material fact, and that the moving party is entitled to judgment as a matter of law. *Barnd v. Borst,* 431 N.E.2d 161 (Ind.Ct. App.1982).

3. The issue before the Court is what is the employment relationship, if any, between Defendant [Schuck] and Defendant [E.B.B.].

4. There is no dispute as to the significant underlying facts regarding the employment relationship between Defendant Schuck and E.B.B. Farms. While it is noted that a written contract is purported to exist, it has not been provided to the Court for consideration. Notwithstanding, the parties do not dispute the terms and conditions under which Defendant Schuck farmed [E.B.B.—3]. Accordingly, there appears to be no dispute as to essential elements of the contract, either oral or written.

5. Where the significant underlying facts are undisputed, the Court may properly determine a worker's classification as a matter of law. *Moberly v. Day,* 757 N.E.2d 1007, 1009 (Ind.2001).

6. Landowners and farmers have undertaken crop-share arrangements in Indiana for well over one hundred years. *Scott v. Ramsey,* 82 Ind. 330 (1882).

7. The question of what legal characterization the relationship between a landowner and farmer in a crop-share arrangement, should be given, appears to be one of first impression in Indiana.

8. The courts of several states have considered this issue and their guidance is sound and instructive. See: *Harlan E. Moore Charitable Trust v. United States*, 812 F.Supp. 130 (C.D.Ill.1993); *Brown v. Snellgrove*, 503 So.2d 447 (Fla. App.1987); *C.E. Johnson & Co. v. Marsh*, 111 Vt. 266, 15 A.2d 577 (Vt. 1940).

9. The relationship between E.B.B. Farms and [Schuck] is clearly one of farming on shares, and that relationship is best characterized as either landlord-tenant. (See: *Harlan E. Moore Charitable Trust v. United States*, 812 F.Supp. 130 (C.D.Ill.1993); *Brown v. Snellgrove*, 503 So.2d 447 (Fla.App. 1987)), or as one of principal-independent contractor.

10. Indiana's long-standing rule is that a principal is not liable for the negligence of an independent contractor. *Moberly v. Day*, 757 N.E.2d 1007 (Ind. 2001); *Bagley v. Insight Communications Co.*, 658 N.E.2d 584 (Ind.1995).

11. [The Byrds'] contention that [Schuck] was an employee of [E.B.B.] must be rejected when the undisputed facts are tested by the analysis used by the Court in *Moberly, supra* and *GKN Co. v. Magness*, 744 N.E.2d 397 (Ind. 2001).

12. The factors the Court considered in application of the test set forth by the Indiana Supreme Court were: (1) extent of control over details of the work; (2) occupation or business of the one employed; (3) kind of occupation; (4) skill required; (5) supplier of equipment and tools; (6) method of payment; (7) regular business of employer; (8) belief of parties; (9) whether the principal is in business; and (10) length of employment.

13. The Indiana Supreme Court's guidance requires that this Court weigh these factors as part of a balancing test. Although no one factor is dispositive, the right to control the manner and means by which the work is to be accomplished is the most important consideration.

14. The leading factor of control weighs significantly in favor of independent contractor status. Further, all other factors, except the last two (i.e., whether the principal is in business and length of employment) are either neutral, or in most cases, weigh in favor of independent contractor status.

15. The Court rejects Plaintiffs' contention that the relationship between E.B.B. Farms was one of either a partnership or a joint venture.

16. In Indiana, the distinction between a joint venture and that of a partnership is that a joint venture contemplates only a single business transaction between the parties. *Inland Steel v. Pequignot*, 608 N.E.2d 1378 (Ind.Ct.App.1993). As E.B.B. Farms' and [Schuck's] relationship was ongoing, and not a single business transaction, it cannot be characterized as a joint venture.

17. To establish a partnership, there must be: (1) a voluntary contract of association for the purpose of sharing profits and losses which may arise from the use of capital, labor, or skill in a common enterprise; and (2) an intention on the part of the parties to form a partnership. *Weinig v. Weinig*, 674 N.E.2d 991 (Ind.Ct.App.1996).

18. There is no evidence that the relationship between E.B.B. Farms and [Schuck] is a partnership.

19. The undisputed facts establish that the parties intended and believed their relationship to be that of landlord-tenant. Accordingly, there existed no intent to form a partnership.

20. The undisputed facts establish that neither E.B.B. Farms nor [Schuck]

agreed to assume the debts of the other, an element which would evidence the existence of a partnership.

21. E.B.B. Farms and [Schuck] did not share equally in each other's profits. The proceeds from the sale of grain was apportioned 50%—50% without regard to the expenses of either E.B.B. Farms or [Schuck]. Accordingly, it is entirely conceivable that E.B.B. Farms may have a net profit in a particular year, while Schuck may have a net loss for the same year, due to equipment or other expenses.

22. The 50% received by E.B.B. Farms under the crop-share arrangement constitutes rent. Indiana Code 23–4–1–7(4)(b) specifically excludes profits received, "As wages of an employee or *rent to a landlord,*" as evidence that a person is a partner in the business. Accordingly, the 50%—50% apportionment between the parties does not constitute the sharing of profits for [the] purpose of establishing the existence of a partnership.

23. To the extent any Findings of Fact are more properly Conclusions of Law, the Court hereby makes such Conclusions.

24. This judgment in favor of E.B.B. and [Caldwell] shall be considered an interlocutory order pending final resolution of this cause of action.

(Appellant's App. pp. 197–204).

The Byrds now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a decision upon a summary judgment motion, we apply the same standard as the trial court. *Miller v. NBD Bank, N.A.,* 701 N.E.2d 282, 285 (Ind.Ct.App.1998). We do not reweigh the evidence designated by the parties. *Turley v. Hyten,* 751 N.E.2d 249, 251 (Ind.Ct. App.2001). Instead, we liberally construe the evidence in the light most favorable to the non-moving party. *Schoknecht v. Hasemeier,* 735 N.E.2d 299, 301 (Ind.Ct.App. 2000).

The moving party bears the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* Once this burden has been met, the non-moving party must respond by setting forth specific facts demonstrating a genuine need for trial, and cannot rest upon the allegations or denials in the pleadings. *Id.* We review only the designated evidentiary material in the record, construing that evidence liberally in favor of the non-moving party, so as not to deny that party its day in court. *Id.*

### II. *Joint Venture*

The Byrds argue that E.B.B. and Caldwell should be liable for the damaged trees on their tree farm. Specifically, the Byrds assert that E.B.B. and Caldwell were engaged in a joint venture with Schuck. Therefore, the Byrds allege that E.B.B. and Caldwell should be liable for the damage caused by Schuck. Alternatively, E.B.B. and Caldwell contend that they have a landlord-tenant relationship with Schuck. Therefore, E.B.B. and Caldwell maintain that they are not liable for the actions of Schuck.

A joint venture has been defined as an association of two or more persons formed to carry out a single business enterprise for profit. *Inland Steel v. Pequignot,* 608 N.E.2d 1378, 1382 (Ind.Ct.

App.1993). For a joint venture to exist, the parties must be bound by an express or implied contract providing for "(1) a community of interests, and (2) joint or mutual control, that is, an equal right to direct and govern the undertaking, that binds the parties to such an agreement." *Id.* (quoting *Boyer v. First National Bank of Kokomo,* 476 N.E.2d 895, 897 (Ind.Ct. App.1985)). A joint venture is similar to a partnership except that a joint venture contemplates only a single transaction. *Id.* A joint venture agreement must also provide for the sharing of profits. *Id.*

In the instant case, there is no evidence that the relationship between E.B.B., Caldwell, and Schuck constitutes a joint venture. The record reflects that both parties to the lease intended a landlord-tenant relationship. In particular, there is no evidence that E.B.B. and Caldwell provided anything to Schuck other than the farmland. The record reveals that E.B.B. and Caldwell did not have mutual control over the farming of E.B.B.—3. E.B.B. and Caldwell also were not involved in making decisions related to E.B.B.—3. The record indicates that Schuck was the only one with authority to make the farming decisions on E.B.B.—3. Additionally, the evidence on the record clearly shows that E.B.B., Caldwell, and Schuck's relationship provides for more than a single business transaction.

With the above in mind, we find that there is no evidence that E.B.B., Caldwell, and Shuck were engaged in a joint venture. The Byrds have failed to produce evidence that: (1) supports their allegation of a joint venture; or (2) contradicts E.B.B. and Caldwell's position. Consequently, E.B.B. and Caldwell were entitled to summary judgment on this issue. As a result, we find that the trial court did not err in finding that E.B.B., Caldwell, and Schuck were not engaged in a joint venture.

### III. *Partnership*

In the alternative, the Byrds contend that the trial court erred in granting E.B.B. and Caldwell's Motion for Summary Judgment because a genuine issue of material fact exists regarding whether E.B.B., Caldwell, and Schuck operated E.B.B.—3 as a partnership.

The existence of a partnership is generally a question of fact. *Weinig v. Weinig,* 674 N.E.2d 991, 994 (Ind.Ct.App. 1996). The requisites of a partnership are that the parties must have joined together to carry on a trade or adventure for their common benefit, each contributing property or services, and having a community of interest in the profits. *Id.* at 994–95. To establish a partnership relation between parties, there must be: (1) a voluntary contract of association for the purpose of sharing profits and losses which may arise from the use of capital, labor, or skill in a common enterprise; and (2) an intention on the part of the parties to form a partnership. *Id.* at 995. Further, the intention which controls in determining the existence of a relationship is the legal intention deducible from the acts of the parties. *Id.* The intention to form a partnership must be determined by examining all the facts of the case, and the conduct of the parties reveals their true intentions and the construction they placed upon their own agreement. *Id.* "This conduct is an exposition of the contract by the parties themselves, and they best knew what their intention was, and what they believed their contract to mean." *Id.* (quoting, *Albright v. Hughes,* 107 Ind.App. 651, 26 N.E.2d 576, 580 (1940)).

Here, the Byrds argue that the first requirement for establishing a part-

nership, that there be a voluntary contract of association for the purpose of sharing profits, is satisfied. However, our review of the record indicates otherwise. In particular, the record reveals that E.B.B. received 50 percent of the profits under the crop-share arrangement. Nonetheless, the deposition testimony in the record shows that both E.B.B. and Schuck intended the share of the profits to constitute rent.

Indiana Code § 23–4–1–7(4)(a)–(b), provide, in pertinent part:

> (4) The receipt by a person of a share of the profits of a business is prima facie evidence that a person is a partner in the business, but no such inference shall be drawn if such profits were received in payment for the following:
>
> (a) As a debt by installments or otherwise;
>
> (b) As wages of an employee or rent to a landlord.

Ind.Code § 23–4–1–7(4)(a)–(b). Thus, pursuant to I.C. § 23–4–1–7(4)(b), the crop-share agreement providing for pre-expense division of crops is akin to rent based on a percentage of gross income. Therefore, we find that E.B.B., Caldwell, and Schuck have properly rebutted the Byrds' inference that a partnership existed by the sharing of profits. *See Endsley v. Game–Show Placements, Ltd.,* 401 N.E.2d 768 (Ind.Ct.App.1980) (where investor in business was entitled to a 49 percent share of profits of business, such gave rise to inference of partnership which could have been rebutted by investor if he had shown the share had been received as a type of payment). Furthermore, the Byrds have adduced no evidence that E.B.B., Caldwell, and Schuck have held themselves out as partners or have assumed the debts of each other. Consequently, the Byrds have failed to satisfy the first element essential to finding a partnership between E.B.B., Caldwell, and Schuck.

 The second element essential to establishing a partnership, *i.e.,* an intention on the part of the parties to form a partnership, was not established by the parties' conduct. As stated above, E.B.B. and Caldwell did not supervise Schuck's farming operations. Under the lease agreement, Schuck retained total control as to the farming of E.B.B.—3 and he did not seek, nor need approval of E.B.B. or Caldwell concerning the farming of E.B.B.—3. Schuck determined what fertilizers and herbicides to use on E.B.B.—3. The record also reflects that Schuck provided his own farming equipment, which he insured, fueled, and maintained. Further, Schuck chose the kind of crops to grow on E.B.B.—3. He also determined when to harvest and sell the crops of E.B.B.—3. Clearly, the conduct of E.B.B., Caldwell, and Schuck indicates that no partnership existed. *See Weinig,* 674 N.E.2d at 994. As a result, we find that E.B.B., Caldwell, and Schuck did not intend to operate E.B.B.—3 as a partnership. *See Id.*

Here, the totality of facts is sufficient to support the trial court's findings of fact and conclusions of law that E.B.B., Caldwell, and Schuck did not enter into a partnership. As previously mentioned, the question of the existence of a partnership is generally one of fact. *Soley,* 656 N.E.2d at 513. Based upon this, we conclude that a genuine issue of fact did not exist regarding whether E.B.B., Caldwell, and Schuck were partners in the farming of E.B.B.—3. Therefore, we find that the trial court properly granted E.B.B. and Caldwell's Motion for Summary Judgment.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly granted

E.B.B. and Caldwell's Motion for Summary Judgment. Therefore, we affirm the trial court's grant of summary judgment in favor of E.B.B. and Caldwell.

Affirmed.

FRIEDLANDER, J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

I agree that the Byrds did not have a partnership arrangement with E.B.B. and Caldwell. With respect to the contention of the Byrds that the relationship with E.B.B. and Caldwell was a joint venture, I concur in the determination of the majority that, as a matter of law, it was not. I do so because the requisite "joint or mutual control, that is an equal right to direct and govern the undertaking" (op. at 754) was lacking.

I do not, however, join the majority's conclusion that as a matter of law, the agreement was not to "carry out a single business enterprise." *Id.* at 753. It would be possible for a reasonable trier of fact to conclude that the undertaking of the parties was for a "single business enterprise for profit" (*Id.*) even though that enterprise was intended to continue over an extended period.[3] A trier of fact might well find that the "single business enterprise" was that of farming. Such a conclusion might be reached even though the farming operation was to continue through several planting and harvesting cycles. See *Baker Farmers Co. v. Harter*, 28 Ill. App.3d 393, 328 N.E.2d 369 (1975) (involving a farming operation over a period of seven years); *In Re McAnelly's Estate*, 127 Mont. 158, 258 P.2d 741 (1953) (a farming operation for twenty eight years);

---

**3.** There is authority for the proposition that, "It cannot be said that a joint venture must always be limited to a single transaction. Thus associations organized for diversified

*C.A. Babcock Co. v. Katz*, 121 Or. 64, 253 P. 373 (1927) (holding a livestock and farming operation over a two year period to be a joint venture); 48A C.J.S. *Joint Ventures* § 17 (1981).

Subject to the above caveat, I concur in the affirmance of the summary judgment granted to defendants E.B.B. and Caldwell.

operations of a continuing nature have been recognized as joint ventures by the courts." 46 AM.JUR. 2d *Joint Ventures* § 14 (1994).