**DLZ INDIANA, LLC, Appellant–Defendant,**

v.

**GREENE COUNTY, Indiana, Appellee–Plaintiff.**

No. 60A04–0808–CV–479.

Court of Appeals of Indiana.

March 12, 2009.

Rehearing Denied June 5, 2009.

Diane W. French, Barry L. Lubow, Columbus, OH, Attorneys for Appellant.

Michael F. Drewry, Sean T. Devenney, Daniel M. Drewry, Drewry Simmons Vornehm, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

In this appeal, we are asked once again to consider what constitutes a joint venture. DLZ Indiana, LLC, ("DLZ") appeals from partial summary judgment in favor of Greene County, Indiana ("the County") on the County's second-amended complaint alleging breach of contract. DLZ presents a single issue for our review, namely, whether the trial court erred when it concluded that DLZ was engaged in a joint venture with United Consulting

Engineers, Inc. ("United") to provide architectural services for the County ("the Project").[1] We hold that United and DLZ did not exercise joint or mutual control over the Project or share profits and, thus, were not doing business as a joint venture as a matter of law.

We reverse and remand with instructions.

### FACTS AND PROCEDURAL HISTORY

On June 25, 2001, the County entered into an Agreement for Design Services ("the Agreement") with United and DLZ to design the expansion and renovation of the Greene County Courthouse in Bloomfield. The first paragraph of the Agreement states:

> THIS AGREEMENT, made as of the 25th day of June, 2001, and amended this 21st day of August, 2001, by and between UNITED CONSULTING ENGINEERS & ARCHITECTS (hereinafter referred to individually as "United") and DLZ OF INDIANA, LLC (hereinafter referred to individually as "DLZ"), jointly and in collaboration (hereinafter collectively referred to as "the Firm"), and [the County] (hereinafter called "Owner").

Appellant's App. at 127. And Section 1 states in relevant part:

> *General Description of Project: Scope of The Firm's Services.* Owner desires to employ the Firm to perform all professional architectural services described in the Agreement for the design and construction of Owner's project to renovate and remodel the Greene County Courthouse, Bloomfield, Indiana. . . .

*Id.* In addition, Section 23 provides:

> *Division of Services/Liability.* United and DLZ have entered into certain

---

1. We heard oral argument on February 11, 2009.

agreements under which DLZ will provide certain design and engineering services. In addition, in executing this Agreement, United and DLZ understand and agree that *United will act as the principal and have full responsibility and liability for all services to be provided under the terms of this Agreement. In addition, DLZ will have responsibility and be liable to the Owner, as a third party beneficiary, for the services it provides.* Further DLZ agrees that it will assign John S. Staley as the design architect for the Project. *Id.* at 135 (emphasis added).

On June 26, 2001, DLZ and United entered into a Subcontract (AIA Standard Form of Agreement Between Architect and Consultant), which identifies United as "the Architect" and DLZ as "the Consultant" on the Project. *Id.* at 398. Article 2.3 of the Subcontract provides that DLZ is an independent contractor, and Article 3.1.7 states that DLZ "shall not be responsible for the acts or omissions of [United.]" *Id.* at 400. In addition, Article 4.5.4 provides in relevant part that DLZ "shall be responsible for [its] negligent acts or omissions, but shall not have control over or charge of and shall not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or of any other persons or entities performing portions of the Work." *Id.* at 402. And, significantly, Article 13.1 provides that United will compensate DLZ for its work on the Project based upon DLZ's invoices "per hourly rates established in Schedule II, Section C[.]" *Id.* at 411. DLZ's fees were "not to exceed" $527,763. *Id.* at 411–12. DLZ received payments for its work directly from United.

After the Project began, but before work was completed, the County filed a complaint against DLZ and United alleging breach of contract, breach of warranty, and negligence. In its second amended complaint, the County alleged that DLZ and United are jointly liable "as a Joint Venture." *Id.* at 293. After summary judgment motions and cross-summary judgment motions were filed on various issues, the trial court concluded in relevant part:

1. In regard to the issue of whether a joint venture relationship existed between DLZ Indiana, LLC. and United Consulting Engineers, Inc., the Court finds that there exists no genuine issue of material fact in regard to this issue.

2. Under Indiana law a joint venture is an association of two or more parties formed to carry out a single enterprise for profit through the combination of their property and services. *Boyer v. First National Bank of Kokomo,* 476 N.E.2d 895 (Ind.Ct.App.1985).

3. The Agreement for Design Services which was negotiated and executed by the parties to this cause provided in its opening paragraph that:

"This Agreement, made as of the 25th day of June, 2001, and amended this 21st day of August, 2001, by and between [United] and [DLZ], jointly and in collaboration (hereinafter collectively referred to as "the Firm") and [the County]"...

4. Throughout the Agreement, United and DLZ are treated as one entity vis-á-vis the plaintiff, and are collectively referred to as the "Firm." This specification of the two defendants as a single entity by means of a joint venture continues throughout the Agreement in regard to such areas as their equal responsibility for the quality of the work, the fact that they were hired as a single entity with combined expertise or special abilities to perform the work for the plaintiff; the responsibility of the "Firm" to indemnify the plaintiff for any

... damages ... resulting from performance of the Services; and in regard to the manner of payment, which was made directly to "the Firm" rather than to the separate defendants.

5. The Court further finds that Section 23 of the Agreement defines the allocation of risk between United and DLZ and does not negate the fact that these parties were jointly and severally liable under the Agreement to the plaintiff under their joint venture.

6. Lastly the evidence shows that at least one of the parties, namely United, considered this arrangement as a joint venture as evidenced by two letters from United's President to United's insurers placing them on notice of plaintiff's claims and referring to the project as one "joint ventured" with DLZ.

7. For all of these reasons, the Court finds that there exists no genuine issue of material fact that a joint venture relationship exists between DLZ and United. The Court further finds that there is no just reason for delay and that final judgment should be entered on this issue in favor of the [County].

*Id.* at 32.[2] Thus, the trial court granted the County's motion for partial summary judgment, and denied DLZ's motion for partial summary judgment on the joint venture issue. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

■ When reviewing summary judgment, this court views the same matters and issues that were before the trial court and follows the same process. *Estate of Taylor ex rel. Taylor v. Muncie Med. Investors, L.P.*, 727 N.E.2d 466, 469 (Ind.Ct. App.2000), *trans. denied.* We construe all facts and reasonable inferences to be drawn from those facts in favor of the nonmoving party. *Jesse v. Am. Cmty. Mut. Ins. Co.*, 725 N.E.2d 420, 423 (Ind.Ct.App. 2000), *trans. denied.* Summary judgment is appropriate when the designated evidence demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Interpretation of the language in a contract is a question of law especially suited for summary judgment proceedings. *Simon Property Group, L.P. v. Michigan Sporting Goods Distribs., Inc.*, 837 N.E.2d 1058, 1070 (Ind.Ct.App.2005), *trans. denied.* We review questions of law de novo, and therefore we give no deference to the trial court's interpretation. *Id.*

■ Here, DLZ contends that the trial court erred when it concluded that there was a joint venture based upon the Agreement. When Indiana courts are called upon to interpret a contract, we apply the four-corners rule, which requires that as to any matter expressly covered in the written contract, the provisions therein, if unambiguous, determine the terms of the contract. *Hilbert v. Conseco Servs., LLC*, 836 N.E.2d 1001, 1008 (Ind.Ct.App.2005), *trans. denied, cert. denied*, 549 U.S. 884, 127 S.Ct. 237, 166 L.Ed.2d 147 (2006). Words used in a contract are to be given their usual and common meaning unless, from the contract and the subject matter thereof, it is clear that some other meaning was intended. *Id.*

■ We interpret a written contract by reading the contract as a whole, and we attempt to construe the language so as to not render any words, phrases, or terms ineffective or meaningless. *Id.* Thus, we must accept an interpretation of the contract which harmonizes its provisions. *Id.* If the language of the contract is unambig-

**2.** The trial court's order is a final, appealable order pursuant to Trial Rule 54(B).

uous and the intent of the parties is discernible from the written contract, the court must give effect to the terms of the contract. *Id.* And, in reading the terms of a contract together, we keep in mind that the more specific terms control over any inconsistent general statements. *See City of Hammond v. Plys,* 893 N.E.2d 1, 4 (Ind.Ct.App.2008). Finally, whether a joint venture exists is generally a question of fact. *See Byrd v. E.B.B. Farms,* 796 N.E.2d 747, 754 (Ind.Ct.App.2003), *trans. denied.* However, where that question can be resolved by looking only to undisputed facts or an unambiguous contract, the existence of a joint venture is a question of law appropriate for summary judgment. *See Simon Property Group,* 837 N.E.2d at 1070; *Byrd,* 796 N.E.2d at 754. Cross-motions for summary judgment do not affect our standard of review.

### Joint Ventures

▮▮▮▮ In *Walker v. Martin,* 887 N.E.2d 125, 138 (Ind.Ct.App.2008), *trans. denied,* this Court reiterated the standard for determining whether a joint venture exists:

A joint venture has been defined as an association of two or more persons formed to carry out a single business enterprise for profit. *Byrd v. E.B.B. Farms,* 796 N.E.2d 747, 753 (Ind.Ct. App.2003), *trans. denied* (citing *Inland Steel [v. Pequignot,]* 608 N.E.2d [1378, 1382 (Ind.Ct.App.1993)]). For a joint venture to exist, the parties must be bound by an express or implied contract providing for (1) a community of interests, and (2) *joint or mutual control, that is, an equal right to direct and govern the undertaking, that binds the parties to such an agreement. Id.* at 754. A joint venture is similar to a partnership except that a joint venture contemplates only a single transaction.

*Id. A joint venture agreement must also provide for the sharing of profits. Id.* (Emphases added).

▮▮▮▮ *Walker* is the most recent in a long line of Indiana cases addressing the requirements for a joint venture. This case law extends back many years and includes *Byrd v. E.B.B. Farms, supra; Inland Steel, supra; Boyer v. First National Bank of Kokomo,* 476 N.E.2d 895, 897–98 (Ind.Ct.App.1985); *Lafayette Bank & Trust Co. v. Price,* 440 N.E.2d 759, 762–63 (Ind.Ct.App.1982); *Minniear v. Estate of Metcalf,* 153 Ind.App. 213, 286 N.E.2d 700, 703 (1972); and *Baker v. Billingsley,* 126 Ind.App. 703, 708, 132 N.E.2d 273, 275–76 (1956), *trans. denied.* The elements of a joint venture identified in *Walker* are well settled:

[I]n the seminal Indiana case on joint venture, *Baker v. Billingsley,* it was established that ... an agreement to share profits is necessary and that "a right of mutual control over the subject matter of the enterprise or over the property engaged therein is essential to a joint adventure."

*Lafayette Bank & Trust,* 440 N.E.2d at 762 (quoting *Baker,* 126 Ind.App. at 708, 132 N.E.2d at 276).

▮▮▮▮ A joint venture will arise only from an express or implied contract. *Byrd,* 796 N.E.2d at 754. That relationship might be expressly defined in a contract or it might be implied from the conduct of the parties, but a joint venture will not arise by operation of law. *See Lafayette Bank & Trust,* 440 N.E.2d at 762. Nor, notably, does merely calling a relationship a "joint venture" mean that a joint venture exists. *See Minniear,* 153 Ind.App. at 216, 286 N.E.2d at 703. As with all contracts, whether or not there is a joint venture is ultimately a question of the intent of the parties, here, United and DLZ.

## Mutual Control Over Subject Matter of the Enterprise

■ The County first asserts that United and DLZ were engaged in a joint venture because the County contracted with United and DLZ as a single entity, which, the County continues, indicates that United and DLZ intended to engage in mutual control over the Project. The Agreement first identifies United "individually" and DLZ "individually," and both companies signed the Agreement by their respective officers. But the Agreement also indicates that United and DLZ were acting "jointly and in collaboration" and "collectively" as "the Firm," and there are references to "the Firm" throughout the Agreement.

■ A joint venture is a specific type of business organization with clearly defined attributes. The fact that two or more parties agree to work "jointly and in collaboration" and "collectively" does not necessarily mean that they are doing business as a joint venture. And while the word "firm" suggests a single entity, the word is a generic term that has no particular or specialized meaning in the law, and the use of that word does not in itself determine the relationship or liability of the parties. As noted above, in *Minniear*, 153 Ind.App. at 216, 286 N.E.2d at 703, this court observed that a party's characterization of an association as a joint venture is not, standing alone, conclusive proof of a joint venture. Thus, we must look beyond labels to the substance of the underlying relationship between United and DLZ to determine whether they had agreed to do business as a joint venture under the Agreement.

■ While the Agreement shows that United and DLZ agreed to work on the Project "jointly and in collaboration," [3] the Agreement does not demonstrate that they exercised joint or mutual control over the Project. Section 23 of the Agreement is dispositive on the issues of control and liability. That provision states:

> *Division of Services/Liability.* United and DLZ have entered into certain agreements under which DLZ will provide certain design and engineering services. In addition, in executing this Agreement, United and DLZ understand and agree that *United will act as the principal and have full responsibility and liability for all services to be provided under the terms of this Agreement. In addition, DLZ will have responsibility and be liable to the Owner, as a third party beneficiary, for the services it provides.* Further DLZ agrees that it will assign John S. Staley as the design architect for the Project.

Appellant's App. at 135 (emphasis added). The plain meaning of Section 23 is that United would have control, as "the principal," over the Project. *Id.* And United assumed "full responsibility and liability for *all* services" provided under the contract. *Id.* (emphasis added). In contrast, DLZ assumed responsibility and liability only for the services it provided to the County, "a third party beneficiary." [4] *Id.*

---

3. While the Agreement includes the words "jointly" and "in collaboration," the words "joint venture" do not appear anywhere in the Agreement.

4. This is a curious use of the term "third party beneficiary." Generally, a third-party beneficiary is defined as "[a] person who, though not a party to a contract, stands to benefit from the contract's performance."

BLACK'S LAW DICTIONARY 149 (7th ed.1999). At oral argument the parties agreed that the use of this term in this context is unusual. We surmise that, given the reference in this paragraph to "certain other agreements" between United and DLZ, the intent of the parties was to recognize the County a third-party beneficiary of the Subcontract. *See* Appellant's App. at 135. Thus, the designation of the

Under the doctrine that the expression of one thing implies the exclusion of another, *see Snider v. Greer Wilkinson Lumber Co.*, 51 Ind.App. 348, 96 N.E. 960, 961 (1912), these provisions necessarily imply that DLZ did not assume responsibility and liability to the County for "all services" or for services it did not provide. Given these provisions, the County cannot show that DLZ and United intended to exercise joint or mutual control over the Project, as required to prove the existence of a joint venture.

Whether or not there is a joint venture, expressly stated or implied by conduct, is, again, ultimately a question of the intent of the parties to the putative venture, United and DLZ. While the scope of United's responsibility and liability under the Agreement is all-inclusive, the scope of DLZ's liability and responsibility is expressly limited to its own services. This is clear evidence of their agreement that DLZ is not jointly and severally liable with United for the entire Agreement with the County. Section 23 is not merely an allocation of risk between DLZ and United, but an unambiguous statement that they did not intend to exercise joint or mutual control over the Project, which also means that their liability and responsibility for the Project is not coextensive.

■ As in a partnership, the parties to a joint venture are jointly and severally liable. Thus, the provisions in Section 23 both allocating responsibility and liability between United and DLZ, and limiting DLZ's responsibility and liability, are incompatible with a joint venture. As a signatory to the Agreement, the County was placed on notice that United and DLZ were not doing business as a joint venture.

Even if the Agreement were ambiguous, the designated, extrinsic evidence also demonstrates that DLZ and United did not intend to be in a joint venture. The Subcontract shows that DLZ and United established a contractor/subcontractor relationship.[5] Like Section 23, the terms of the Subcontract clearly indicate that United had control over the Project and that DLZ had only limited responsibility and liability. The Subcontract identifies DLZ as an independent contractor and states that DLZ "shall not be responsible for the acts or omissions of [United]." Appellant's App. at 400.

**Shared Profits**

■ We also conclude that there is nothing in the Agreement or other designated evidence showing that DLZ and United agreed to share profits from the Project. At oral argument, the County conceded that, under the compensation provisions of the Agreement, DLZ's profit or loss is independent of United's profit or loss. This Court considered a similar fact pattern in *Byrd*, 796 N.E.2d at 754–55, where a farm owner contracted to divide the gross proceeds from the sale of grain with the farm operator without regard to the expenses of either. The trial court

County as a "third party beneficiary" permits a suit directly between the County and DLZ rather than requiring, for example, the County to sue United and United, in turn, to sue DLZ as a third-party defendant. The Agreement's use of "third party beneficiary," when understood in this manner, further demonstrates that DLZ was not a principal but was subordinate to United on the Project.

5. The County contends that additional extrinsic evidence shows that DLZ and United were engaged in a joint venture, namely, two identical letters written by United's President on July 9, 2003. Those letters include references to United's "joint venture" with DLZ on the Project. But, again, a party's characterization of an association as a joint venture is not, standing alone, conclusive proof that the relationship is a joint venture. *See Minniear*, 286 N.E.2d at 703.

held that there was no profit sharing between the parties, concluding that "it is entirely conceivable" that the owner "may have a net profit in a particular year" while the operator "may have a net loss for the same year." *Id.* at 753. On appeal, we agreed and held that there was no mutual control or profit sharing between the parties and, hence, no joint venture or partnership. Likewise, here there is no evidence of shared profits to satisfy that element of a joint venture. United and DLZ neither share the same bottom line nor share in each other's profits.

 The usual or common meaning of "profit" is a financial gain or return net of a capital investment, the cost of labor, or other expenses. In the context of a joint venture, before profit can be attributed to the joint venture, there must first be a community of interests or joint proprietary interest in the undertaking. An agreement to share the risk and the reward of the enterprise is an essential ingredient and condition precedent to shared profits. In a joint venture, profit means a net financial gain or return for the joint venture, not merely for the parties individually.

Here, the evidence shows that United paid DLZ at an hourly rate for DLZ's services. While the Agreement provides that the County "shall make" progress payments "to the Firm," the County did not designate evidence of any such payments. Instead, the designated evidence includes copies of checks that United issued in payment of DLZ invoices and shows that DLZ received "all payment for its work under the Agreement ... directly from United[.]" *Id.* at 525.

The Subcontract provides that DLZ "shall invoice per hourly rates" and that: [p]ayments to [DLZ] shall be made promptly after [United] is paid by [the County] under the [Agreement]. [Unit-

ed] shall exert reasonable and diligent efforts to collect prompt payment from [the County]. [United] shall pay [DLZ] in proportion to amounts received from [the County] which are attributable to [DLZ]'s services rendered.

*Id.* at 410. Thus, the evidence demonstrates that United paid DLZ for its services rendered according to its hourly rates. The payment of professional fees to DLZ for services rendered at a predetermined contract rate is not a distribution of profit. *See, e.g., Walker,* 887 N.E.2d at 138 (holding that the parties did not "share[ ] in any profit" to establish a joint venture, although one party paid the other per load based on miles traveled or per board feet of wood hauled); *Inland Steel,* 608 N.E.2d at 1382 (holding that a contract for steel shipments at predetermined rates is not profit sharing for purposes of a joint venture).

### Conclusion

In sum, the Agreement is unambiguous with respect to whether United and DLZ were doing business as a joint venture. First, there is no evidence that they exercised joint or mutual control over the Project, which is an essential element. Section 23 of the Agreement allocates responsibility and liability between them, limits DLZ's responsibility and liability, and identifies United as "the principal." If "the Firm" were a joint venture, both United and DLZ would exercise joint or mutual control over the Project and would be jointly and severally liable as principals. But Section 23 makes it clear that United and DLZ do not have "an equal right to direct and govern the undertaking." *See Walker,* 887 N.E.2d at 138.

Second, and of equal significance, there is no evidence within the Agreement that United and DLZ shared profits. An agreement to share profits is essential to a

joint venture. Here, United and DLZ had no joint proprietary interest. Instead, they were paid for their professional services at their own predetermined hourly rates, and they did not share in each other's profits or losses.

And finally, even if the Agreement were ambiguous, the designated, extrinsic evidence also demonstrates that the essential elements of joint or mutual control and shared profits are missing.

We conclude that there is no genuine issue of material fact and hold that United and DLZ were not engaged in a joint venture as a matter of law. We reverse the entry of summary judgment for the County and instruct the trial court to enter partial summary judgment for DLZ on this issue.

Reversed and remanded with instructions.

BAKER, C.J., and KIRSCH, J., concur.